No. 22-51124

IN THE

# United States Court Of Appeals
# For The Fifth Circuit

---

KEVIN CLARKE, TREVOR BOECKMANN, HARRY CRANE, CORWIN SMIDT, PREDICT IT, INC., ARISTOTLE INTERNATIONAL, INC., MICHAEL BEELER, MARK BORGHI, RICHARD HANANIA, JAMES D. MILLER, JOSIAH NEELEY, GRANT SCHNEIDER, and WES SHEPHERD,

*Plaintiffs-Appellants*,

v.

U.S. COMMODITY FUTURES TRADING COMMISSION,

*Defendant-Appellee.*

---

On Appeal from the United States District Court for the
Western District of Texas, No. 1:22-cv-00909-LY

---

## DEFENDANT-APPELLEE'S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS-APPELLANTS' MOTION FOR INJUNCTION PENDING APPEAL

---

Robert A. Schwartz
  *General Counsel*
Anne W. Stukes
  *Deputy General Counsel*
Kyle M. Druding
  *Assistant General Counsel*
U.S. COMMODITY FUTURES
  TRADING COMMISSION
3 Lafayette Centre
1155 21st Street, NW
Washington, D.C. 20581
(202) 418-5000
kdruding@cftc.gov

January 10, 2023

## CERTIFICATE OF INTERESTED PERSONS

Under Fifth Circuit Rule 28.2.1, the United States Commodity Futures Trading Commission, as a governmental party, need not submit a certificate of interested persons.

/s/ *Kyle M. Druding*
Kyle M. Druding

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION .......................................................................... 1

BACKGROUND ............................................................................ 2

    A. The Commission, the Commodity Exchange Act,
    and Event Contracts. ............................................................ 2

    B. DCM and SEF Registration, Section 4(c) Exemptions,
    and Staff No-Action Letters .................................................... 3

    C. The PredictIt Market, No-Action Letter 14-130,
    and its Withdrawal. ............................................................ 5

    D. Procedural History. ........................................................... 7

ARGUMENT ............................................................................. 10

I.    This Court Lacks Jurisdiction. ...................................................... 10

    A. The District Court has not "constructively denied" Plaintiffs'
    preliminary-injunction motion. .................................................. 10

    B. Plaintiffs fail to comply with Fed. R. App. P. 8 and have acted
    inconsistently with their supposed need for expedited relief. .................... 12

    C. Mandamus is not available either. .............................................. 15

II.    Were This Court To Reach It, Plaintiffs' Motion for Injunction
    Pending Appeal Lacks Merit ...................................................... 16

A. Plaintiffs' preferred "sliding scale" approach is wrong. ......................... 16

B. There is no likelihood of success on the merits...................................... 17

   i.   There is no final agency action. ......................................................... 17

   ii.  CFTC staff no-action letters are "committed to agency discretion by law."................................................................................................ 20

   iii. The third-party Plaintiffs lack Article III standing to assert claims on non-party Victoria University's behalf. ........................................ 21

C. The alleged harms are not irreparable. ..................................................... 22

D. The balance of equities and public interest disfavor injunctive relief. ....................................................................................................... 22

E. Injunctive relief is unavailable to preempt a hypothetical Commission enforcement action......................................................................................... 23

CONCLUSION ................................................................................... 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Apache Corp. v. Chevedden*,
  696 F. Supp. 2d 723 (S.D. Tex. 2010) ............................................................. 17

*In re Babin*,
  No. 22-40306, 2022 WL 1658701 (5th Cir. May 25, 2022) ............................. 15

*Bennett v. Spear*,
  520 U.S. 154 (1997) ......................................................................................... 18

*Board of Trade of City of Chicago v. SEC*,
  883 F.2d 525 (7th Cir. 1989) ................................................................ 17, 20, 21

*Data Mktg. P'ship v. U.S. Dep't of Lab.*,
  45 F.4th 846 (5th Cir. 2022) ...................................................................... 19, 20

*Davis v. Pension Benefit Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009) ...................................................................... 16

*Dennis Melancon, Inc. v. City of New Orleans*,
  703 F.3d 262 (5th Cir. 2012) ........................................................................... 22

*Dine Citizens Against Ruining Our Env't v. Jewell*,
  839 F.3d 1276 (10th Cir. 2016) ....................................................................... 16

*Ewing v. Mytinger & Casselberry*,
  339 U.S. 594 (1950) ......................................................................................... 23

*Fideicomiso De La Tierra Del Cano Martin Pena v. Fortuno*,
  582 F.3d 131 (1st Cir. 2009) ................................................................ 11, 12, 15

*Holistic Candlers & Consumers Ass'n v. FDA*,
  664 F.3d 940 (D.C. Cir. 2012) ........................................................................ 18

iv

*IDS Life Ins. Co. v. SunAmerica, Inc.*,
   103 F.3d 524 (7th Cir. 1996) ............................................................11, 13

*Kixmiller v. SEC*,
   492 F.2d 641 (D.C. Cir. 1974) .............................................................17

*Luminant Generation Co. v. EPA*,
   757 F.3d 439 (5th Cir. 2014) ...............................................................18

*McCoy v. Louisiana State Bd. of Educ.*,
   332 F.2d 915 (5th Cir. 1964) ..........................................................10, 11

*Nat'l Wrestling Coaches Assoc. v. Dep't of Ed*,
   366 F.3d 930 (D.C. Cir. 2004) .............................................................21

*New York City Emps.' Ret. Sys. v. SEC*,
   45 F.3d 7 (2d Cir. 1995) .....................................................................17

*Ruiz v. Estelle*,
   650 F.2d 555 (5th Cir. 1981) ...............................................................16

*Sec'y of Lab. v. Twentymile Coal Co.*,
   456 F.3d 151 (D.C. Cir. 2006) .............................................................24

*Soundboard Ass'n v. FTC*,
   888 F.3d 1261 (D.C. Cir. 2018) ...........................................................18

*Taylor-Callahan-Coleman Cntys. Dist. Adult Prob. Dep't v. Dole*,
   948 F.2d 953 (5th Cir. 1991) ...............................................................23

*Wages and White Lions Invs., LLC v. FDA*,
   16 F.4th 1130 (5th Cir. 2021) ..............................................................22

*Winter v. NRDC*,
   555 U.S. 7 (2008) ...............................................................................16

**Statutes:**

Administrative Procedure Act:
   5 U.S.C. § 701(a)(2) ................................................................... 21
   5 U.S.C. § 704 ........................................................................... 17
   5 U.S.C. § 705 ........................................................................... 12

Commodity Exchange Act:
   7 U.S.C. § 2(a)(1)(A) .................................................................. 2
   7 U.S.C. § 6(b)(1)(A) .................................................................. 3
   7 U.S.C. § 6(c) ............................................................................ 4
   7 U.S.C. § 7a-2(c)(5)(C)(i) .......................................................... 3
   7 U.S.C. § 7b .............................................................................. 3
   7 U.S.C. § 8(b) ........................................................................... 3

28 U.S.C. § 1291 ........................................................................... 10

28 U.S.C. § 1292(a)(1) .................................................................... 10

**Rules and Regulations:**

CFTC Regulations:
   17 C.F.R. § 40.11 ....................................................................... 3
   17 C.F.R. § 140.99(a)(2) ............................................... 4, 5, 17, 21, 23
   17 C.F.R. § 140.99(b)(1) .............................................................. 4
   17 C.F.R. § 140.99(e) .................................................................. 4

D.D.C. LCvR. 65.1(d) .................................................................... 14

Fed. R. App. P. 8(a) ...................................................................... 12

Fed. R. App. P. 21(a)(1) ................................................................. 15

5th Cir. R. 27.3 ............................................................................. 13

5th Cir. R. 27.4 ............................................................................. 13

*Requests for Exemptive, No-Action and Interpretive Letters*,
   63 Fed. Reg. 3285 (Jan. 22, 1998) ............................................ 20, 23

## INTRODUCTION

This "appeal" has no business before this Court.  Facing imminent transfer or outright dismissal, and dissatisfied with the self-inflicted pace of litigation, Plaintiffs attempt to boot-strap appellate jurisdiction to ask this Court to grant their preliminary-injunction motion before the District Court weighs in.  To that end Plaintiffs have manufactured a series of inconsistent, legally meaningless deadlines—including "early December," "December 15," "Christmas," and currently "January 19"—to demand extraordinary intervention by this Court.

But federal appellate jurisdiction does not cover such maneuvering.  The District Court has not yet entered a reviewable order, "constructive" or otherwise.  Indeed, the District Court can and should transfer or dismiss this case as explained in the Magistrate Judge's December 12, 2022 Report & Recommendations ("R&R"), to which Plaintiffs objected only several days after noticing this appeal.  *See* D.Ct. Dkt. 31 at 7–8 (attached as "Exhibit 1") (recommending transfer and noting "the strength of CFTC's motion to dismiss").  The District Court is fully empowered to, and may at any time, reach Plaintiffs' preliminary-injunction motion.  And the District Court's unremarkable docket-sequencing choices to date come nowhere close to the extraordinary circumstances warranting mandamus.

On substance, this case is meritless.  Plaintiffs ask this Court to break with decades of settled case law and be the first to hold that a "no-action" letter is final

agency action, despite the fact that the letter here states only that CFTC *staff*, as a matter of prosecutorial discretion, will not "*recommend* that the Commission take any enforcement action" and that it does "not" bind "the Commission" itself.  And they do so as third parties without Article III standing, purportedly on non-party Victoria University's behalf, seeking judicial preemption of a hypothetical enforcement action that the Commission might or might not authorize.

This Court should dismiss or, at a minimum, deny Plaintiffs' motion.

## BACKGROUND

The following is an abbreviated version of the background from the CFTC's opposition to Plaintiffs' preliminary-injunction motion, D.Ct. Dkt. 17, and motion to dismiss, D.Ct. Dkt. 19.  That briefing is incorporated by reference in its entirety.

### A. The Commission, the Commodity Exchange Act, and Event Contracts.

The Commodity Futures Trading Commission ("CFTC") is the federal agency tasked with administering and enforcing the Commodity Exchange Act ("CEA" or "the Act"), 7 U.S.C. §§ 1–26.  The CEA governs, among other things, markets for commodity derivatives.  *See* 7 U.S.C. § 2(a)(1)(A).  A derivative is a

financial instrument, such as a future, option, or swap, whose price is dependent upon—*i.e.*, "derived from"—the value of something else.[1]

Relevant here are "event contracts," a derivative whose payoff is based on a specified event, occurrence, or value such as a macroeconomic indicator, corporate earnings, level of snowfall, or value of hurricane damages.[2]

**B.  DCM and SEF Registration, Section 4(c) Exemptions, and Staff No-Action Letters.**

Broadly speaking, there are three categories of Commission- and staff-level conduct relevant here:

*DCM and SEF Registration.*  Under the CEA and CFTC regulations, those seeking to offer certain event contracts generally must do so as a "registered entity," 17 C.F.R. § 40.11, including as a designated contract market ("DCM") or swap execution facility ("SEF"), 7 U.S.C. § 7a-2(c)(5)(C)(i); *id.* § 6(b)(1)(A).  If the Commission grants DCM or SEF registration, that registration can be revoked only by following procedures subject to judicial review.  *See* 7 U.S.C. §§ 7b, 8(b).

---

[1] CFTC, *Glossary:  A Guide to the Language of the Futures Industry*, https://www.cftc.gov/LearnAndProtect/AdvisoriesAndArticles/CFTCGlossary/index.htm (last visited Jan. 10, 2023).

[2] CFTC, *Contracts & Products:  Event Contracts*, https://www.cftc.gov/IndustryOversight/ContractsProducts/index.htm (last visited Jan. 10, 2023).

*Section 4(c) Exemptions*.  Alternatively, CEA Section 4(c) provides that the Commission "may," at its discretion, "exempt any agreement, contract, or transaction (or class thereof)" from certain otherwise-applicable CEA requirements "by rule, regulation, or order" if, "after notice and opportunity for hearing" in accordance with the Administrative Procedure Act ("APA"), the Commission makes certain required findings following prescribed procedures.  *See* 7 U.S.C. § 6(c)(1)–(2).  As with DCM and SEF registration, a Commission decision to revoke a Section 4(c) exemption is subject to judicial review.

*No-action letters*.  At issue in this lawsuit are staff no-action letters.  These letters do not issue from and, by regulation, do not bind the Commission itself. Rule 140.99(a)(2) requires that no-action letters state only the issuing staff "will not recommend enforcement action to the Commission for failure to comply with a specific provision of the [CEA] or of a Commission rule, regulation or order."  17 C.F.R. § 140.99(a)(2).  If issued, "[o]nly *the* Beneficiary," in this case non-party Victoria University, "may rely" on the letter.  *Id.* (emphasis added).  The decision whether to grant a no-action letter "is entirely within the discretion of Commission staff."  *Id.* § 140.99(b)(1), (e).  No-action letters can be "issued by the staff of a Division of the Commission or of the Office of the General Counsel" and "represent[] the position only of the Division that issued it" and "bind[] only the

4

issuing Division"—"not the Commission or other Commission staff." *Id.*
§ 140.99(a)(2).

**C. The PredictIt Market, No-Action Letter 14-130, and its Withdrawal.**

In this case, non-party Victoria University eschewed formal registration or
exemptive relief from the Commission and chose instead to pursue a staff no-
action letter, and that is all the University received. *See, e.g.*, Am. Compl. ¶¶ 1, 7,
25, 58–63 & Exs. 1, 3.

That 2014 no-action letter (No. 14-130) concluded that Division of Market
Oversight ("DMO") staff "will not recommend that the Commission take any
enforcement action in connection with the operation of your proposed market for
event contracts" were the online PredictIt market to operate as proposed, and
"overseen by faculty at the University." *See* Am. Compl. Ex. 1 at 5.  On its face,
the 2014 no-action letter, repeatedly labelled as such, is clear as to its limited
scope and effect:

> [B]ased upon your representations, DMO will not recommend that the
> Commission take any enforcement action in connection with the
> operation of your proposed market for event contracts based upon the
> operators' not seeking designation as a contract market, registering under
> the Act or otherwise complying with the Act or Commission regulations.
>
> ….
>
> This letter, and the no-action position taken herein, represents the views
> of DMO only, and does not necessarily represent the positions or views
> of the Commission or of any other division or office of the Commission.
> As with all no-action letters, DMO retains the authority to condition
> further, modify, suspend, terminate or otherwise restrict the terms of the
> no-action relief provided herein, in its discretion.

5

Am. Compl. Ex. 1, at 5–6.  Nowhere does that letter refer to a "license," "permission," or "approval" of any sort.

On August 4, 2022, DMO staff issued a second letter to Victoria University (No. 22-08) withdrawing the 2014 no-action letter.  Am. Compl. ¶ 8 & Ex. 2.  That withdrawal summarized the Division's 2014 position to "not recommend enforcement action (*i.e.*, 'no-action' relief)" and concluded that "[t]he University has not operated its market in compliance with the terms of Letter 14-130."  Am. Compl. Ex. 2 at 1–2.  As to any then-existing contracts operated "in a manner consistent with each of the terms and conditions provided in Letter 14-130," DMO advised that they "*should* be closed out and/or liquidated no later than 11:59 p.m. eastern on February 15, 2023."  *Id.* (emphasis added).  The Commission did not issue the letter or order anything, and DMO did not threaten any action should PredictIt decline to observe this staff-specific grace period.  Indeed, DMO staff are not authorized under the CEA or CFTC regulations to impose such consequences beyond recommending that the Commission itself bring an enforcement action.

**D. Procedural History.**

Plaintiffs filed suit on September 9, and their Amended Complaint on October 6, 2022.  D.Ct. Dkts. 1, 15.  Relevant here, the Parties have collectively filed three motions pending before the District Court.

First, on September 20, the CFTC moved to transfer venue to the District of Columbia, where all the operative facts giving rise to Plaintiffs' claims occurred with the sole exception of Wellington, New Zealand, and where all counsel are located.  D.Ct. Dkt. 8; *see also* D.Ct. Dkts. 13, 16.

Second, Plaintiffs waited three weeks after filing suit to seek a preliminary injunction on September 30.  D.Ct. Dkt. 12; *see also* D.Ct. Dkts. 17, 18.  Despite raising harm arguments virtually identical to those presented here, Plaintiffs did not move to expedite or offer a briefing schedule, and the only potential relief date referenced in their 98-page filing was February 15, 2023.  *See, e.g.*, D.Ct. Dkt. 12-1 at 1, 6, 7, 8, 9, 10, 11, 14, 16, 17.

Third, the CFTC moved to dismiss on October 28, 2022.  D.Ct. Dkt. 19; *see also* D.Ct. Dkts. 21, 25.

The District Court referred to the Magistrate Judge both the CFTC's motion to transfer and motion to dismiss, on October 6 and November 18.  *See* D.Ct. Dkts. 14, 22.  The Magistrate Judge heard oral argument on December 1, and issued his R&R less than two weeks later on December 12.  D.Ct. Dkts. 29, 31.

The R&R concludes that the CFTC's motion to transfer should be granted because multiple factors favored venue in the District of Columbia, including that the D.C. District Court's docket is substantially less congested than the Western District of Texas's. *See* D.Ct. Dkt. 31 at 4–7 (citing a difference in 845 versus 286 weighted filings per judge and noting that Plaintiffs' "reasons for filing the suit here still confound the court, even after the hearing"). Further, while the R&R does not ultimately reach the CFTC's motion to dismiss, the Magistrate Judge noted that he was "highly skeptical" of Plaintiffs' merits arguments and expressed concern over their "inability to cite cases directly holding that a no action letter is the equivalent of a license or other final action or that third parties are beneficiaries to a no action letter with standing [to] sue." D.Ct. Dkt. 31 at 7–8 & n.4. Plaintiffs objected to the R&R on December 27, four days *after* noticing this appeal. D.Ct. Dkt. 33.

Months after filing suit, more than six weeks after moving for preliminary injunctive relief, and only after the District Court had referred the CFTC's motions to transfer and dismiss, Plaintiffs moved to expedite on November 18. *See* D.Ct. Dkts. 23, 26, 27. That motion asked for a preliminary-injunction decision "before Christmas," and for the first time, Plaintiffs claimed their harms would be "accelerat[ing]" in "early December" or, alternatively, "[b]y December 15"— months in advance of the alleged February 15, 2023 deadline originally briefed. *See, e.g.*, D.Ct. Dkt. 23 at 1–3 & Ex. 2 ¶ 6. Plaintiffs further threatened that "[i]n

the absence of more expedited treatment" they would have "no choice but to seek

a temporary restraining order," *id.* at 6, which they never did.

Plaintiffs noticed this appeal on December 23, 2022. D.Ct. Dkt. 32. They

did so rather than seek any further relief from the District Court and more than a

week after any "early December" and "[b]y December 15" harms had, presumably,

occurred. Eleven days later, following the New Year's holiday, Plaintiffs filed

with this Court their motion for injunction pending appeal, accompanied by a

declaration never presented to the District Court. *See* Mot. at 4 & Ex. 1 (Dec. 31,

2022 Declaration of John Phillips). Plaintiffs—correctly—declined to label their

latest filing an "emergency motion" for purposes of Circuit Rule 27.3. But they

nevertheless moved to shorten the CFTC's response time and requested that this

Court grant an injunction "as soon as possible before January 19"—a total

turnaround time of 16 days. *See* Mot. at iii–iv.[3]

Plaintiffs never moved the District Court for injunctive relief pending appeal

per Federal Rule of Appellate Procedure 8. Nor have Plaintiffs provided the

---

[3] As with their previous December deadlines briefed to the District Court, *see*
D.Ct. Dkt. 23 at 1, Plaintiffs do not explain why their current January 19 relief date
was selected, besides that the period of "mid- to late-January 2023" is
"approximately 15 to 30 days before the CFTC deadline." *See* Mot. at iii.
Notably, had Plaintiffs chosen an earlier date they would have faced Circuit Rule
27.3's heightened procedural requirements, which apply to "motions seeking relief
before the expiration of 14 days after filing."

District Court an update as to their circumstances since November 18, 2022. And Plaintiffs have further failed to explain to the District Court why they believe, per their representations to this Court, that January 19 now reflects an appropriate, legally meaningful relief date.

## ARGUMENT

### I.    This Court Lacks Jurisdiction.

#### A. The District Court has not "constructively denied" Plaintiffs' preliminary-injunction motion.

Ordinarily this Court has "jurisdiction of appeals" from only those district-court decisions that are "final." 28 U.S.C. § 1291. An exception applies for "[i]nterlocutory orders of the district courts … refusing or dissolving injunctions." *Id.* § 1292(a)(1). And in rare cases, jurisdiction may also exist when a district court takes certain other action that would have "the practical effect" of "deny[ing] the preliminary injunction" requested. *See, e.g.*, *McCoy v. Louisiana State Bd. of Educ.*, 332 F.2d 915, 916–918 (5th Cir. 1964) (asserting appellate jurisdiction to impose school-desegregation order ten years after *Brown v. Board of Education* when district court set joinder deadline that would not otherwise conclude before the semester started). Because the difference between "the denial of a motion and deferral of action" is "a hazy one," federal appellate courts entertain such "constructive denial" claims only when there has been a "showing of unjustifiable

delay coupled with irreparable injury if an immediate appeal is not allowed." *See, e.g.*, *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 526 (7th Cir. 1996).

Plaintiffs relying on *McCoy* argue that they, too, face an "effective denial" because the District Court has improperly "prioritiz[ed] certain procedural issues over the time-sensitive motion for a preliminary injunction."  Mot. at 5–6 (citing 332 F.2d at 916–17).  Plaintiffs' case is nothing like *McCoy*.  Unlike the June 10 start of summer school that would necessarily be missed after an additional 60-day joinder period was scheduled in late May, the District Court here has not taken any action indicating a refusal to resolve Plaintiffs' preliminary-injunction motion in due course and nothing the District Court has done indicates that it already *has* denied injunctive relief.  While the CFTC's motions to transfer and dismiss and the Plaintiffs' preliminary-injunction motion remain pending, that is hardly surprising as Plaintiffs waited until December 27, 2022—15 days after the R&R issued and 4 days after they noticed this appeal—to file objections.  If anything, Plaintiffs' decision to slow-walk their objections and file this interlocutory "appeal" will only further complicate the District Court's unremarkable and inherently discretionary approach to sequencing its docket.

There is thus no appellate jurisdiction.  The District Court's choice to address certain "threshold" matters first does not establish that it "was foreclosing the requested [injunctive] relief."  *See, e.g.*, *Fideicomiso De La Tierra Del Cano*

11

*Martin Pena v. Fortuno*, 582 F.3d 131, 134 (1st Cir. 2009) (per curiam)

(dismissing putative "appeal").  This Court should dismiss.[4]

### B. Plaintiffs fail to comply with Fed. R. App. P. 8 and have acted inconsistently with their supposed need for expedited relief.

This "appeal" independently warrants dismissal because Plaintiffs ignored

Federal Rule of Appellate Procedure 8 and have acted inconsistently with the

supposed need for expedited—but not emergency—appellate relief for their "now-

emergency situation."  Mot. at 11.

Rule 8 requires that parties first seek injunctive relief from the District Court

unless "impracticable."  *See* Fed. R. App. P. 8(a)(1), (2)(A)(i).  There was nothing

impracticable about complying here.  Plaintiffs first argue that their motion to this

Court "seeks almost identical relief" to their "pending preliminary injunction

motion," such that their original filings should count as good enough.  *See* Mot. at

11.  That ignores the fact that Plaintiffs never presented to the District Court,

among other things, the December 31, 2022 Declaration of John Phillips—and

thus the supposed newly irreparable harms coming in "mid- to late-January

2023"—relied on in this Court.  To the extent Plaintiffs believe that their changed

---

[4] Part II of Plaintiffs' Motion asks that an identical injunction issue under 5 U.S.C. § 705, an APA-specific stay provision.  *See* Mot. at 19–20.  But this Court may issue a Section 705 stay only "on appeal."  Because there is no appellate jurisdiction, Section 705 is likewise unavailable.

circumstances warrant a different result, they should have raised such arguments

with the District Court and secured a reviewable order. *Cf. IDS Life Ins. Co.*, 103

F.3d at 527 (explaining that "it is better to disambiguate" a district-court order

actually issued "than to fret over the meaning of constructive denial").

Plaintiffs alternatively argue that complying with Rule 8 was impracticable

because "time does not remain for moving first in the district court" as they face a

"now-emergency situation." Mot. at 11–12. Wrong again. To start, Plaintiffs'

self-characterization of their "now-emergency" situation contradicts their strategic

decision not to treat this "appeal" as an "emergency" under Circuit Rule 27.3.

Mot. at iii–iv; *compare* 5th Cir. R. 27.4, *with* 5th Cir. R. 27.3.

More fundamentally, however, Plaintiffs' behavior cannot be squared with

the existence of an "emergency." To recap, Plaintiffs have known since August 4,

2022, of the non-binding, staff-specific February 2023 grace period announced in

DMO's withdrawal letter. Yet Plaintiffs waited over a month to file suit on

September 9, and then another three weeks to request a preliminary injunction on

September 30. Plaintiffs failed to move for a briefing schedule and identified only

February 15, 2023, as the requested relief date. Only months later, on

November 18, did Plaintiffs move for expedited relief "before Christmas" tied to

allegedly "accelerating" harms in "early December" or "[b]y December 15." Over

a month after that, and only after the R&R issued but before filing objections 15

13

days later, Plaintiffs noticed this appeal on December 23. Without seeking further District Court relief at any point, Plaintiffs then waited an additional 11 days until January 3 to move this Court for expedited (but not "emergency") relief. Plaintiffs now ask for a decision no later than January 19, a legally meaningless date chosen for being sometime in "mid- to late January," giving this Court a mere 5 days to review hundreds of pages of duplicative briefing that has been teed up for the District Court only as of December 27.

Throughout this entire saga, Plaintiffs' core harm theories—all of which involve supposed downstream economic losses in their capacities as third parties—have remained substantively identical, changing, if at all, only in degree. That does not reflect an "emergency" in any sense of the word. And certainly not one precluding recourse to the District Court.

Moreover, if Plaintiffs had brought suit in the logical venue, or agreed to a voluntary transfer, their motion would have been resolved long ago. The D.C. District Court entitles parties to a preliminary-injunction hearing within 21 days upon showing "facts which make expedition essential." *See* D.D.C. LCvR 65.1(d); *see also* 12.1.2022 Tr. 30:9–11 (relevant excerpts attached as "Exhibit 2") ("The Court: All you've got to do is look at the data. You weren't going to get a preliminary injunction hearing here anywhere near as quickly as you might have gotten it in D.C."). That Plaintiffs never pursued this obvious alternative for faster

14

resolution at any point over the last five months—and instead spent almost two months setting up this Hail Mary—belies their late-coming protests.

### C. Mandamus is not available either.

"A writ of mandamus is an extraordinary remedy reserved for really extraordinary cases." *In re Babin*, No. 22-40306, 2022 WL 1658701, at *3 (5th Cir. May 25, 2022) (quotation omitted). This is not an extraordinary case, much less a "really" extraordinary one. Indeed, Plaintiffs' argument fails at the outset because they do not even try to make this Court's three-part mandamus showing, nor could they. Instead, they cite facially inapposite case law, make high-level policy arguments about "Congress's decision to provide prompt appellate review," and express generalized concern for American "representative democracy." *See* Mot. at 20–22.

The extraordinary remedy of mandamus is unavailable here. *See, e.g.*, *Fideicomiso*, 582 F.3d at 135 (declining to issue "decidedly premature" writ as alternative to failed "constructive denial" theory); *see also* Fed. R. App. P. 21(a)(1) (requiring petitioners "to provide a copy" of mandamus petition "to the trial-court judge," which Plaintiffs never served here).

15

## II. Were This Court To Reach It, Plaintiffs' Motion for Injunction Pending Appeal Lacks Merit.

Plaintiffs' motion here is nearly identical to their September 30, 2022 preliminary-injunction motion. As explained in both the CFTC's opposition, D.Ct. Dkt. 17 (attached as "Exhibit 3"), and the CFTC's motion-to-dismiss briefing, D.Ct. Dkts. 19, 25, Plaintiffs are not entitled to injunctive relief. The following summarizes those arguments, which are incorporated by reference in their entirety.

### A. Plaintiffs' "sliding scale" approach is wrong.

Plaintiffs propose that "they 'need only present a substantial case on the merits' involving 'a serious legal question'" so long as they make a correspondingly stronger showing on the other three injunction factors. *See* Mot. at 13–14 (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)). That sort of "sliding scale" approach cannot be squared with the Supreme Court's decision in *Winter v. NRDC*, which requires showing that each injunction factor is "*likely*," rather than a mere "possibility." 555 U.S. 7, 22 (2008). While this Court has not yet decided whether some form of "sliding scale" survives *Winter*, Plaintiffs' approach is no longer tenable. *See, e.g.*, *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295–96 (D.C. Cir. 2009) (Kavanaugh, J., concurring).

**B. There is no likelihood of success on the merits.**

Regardless of the injunction standard this Court may ultimately adopt, Plaintiffs' motion fails because their case is meritless. *See also* D.Ct. Dkt. 31 at 7–8 & n.4 (noting "the strength of CFTC's motion to dismiss").

### i.    There is no final agency action.

No court has ever held a no-action letter or its withdrawal to be judicially reviewable. *See, e.g.*, *Board of Trade of City of Chicago v. SEC*, 883 F.2d 525, 530 (7th Cir. 1989) (holding SEC no-action letters do not constitute reviewable "final agency action"); *Kixmiller v. SEC*, 492 F.2d 641, 645–646 (D.C. Cir. 1974) (per curiam) (same); *see also New York City Emps.' Ret. Sys. v. SEC*, 45 F.3d 7, 12 (2d Cir. 1995) (holding that SEC no-action letters are "interpretive" policy statements that do not require notice-and-comment rulemaking); *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 735 (S.D. Tex. 2010) (Rosenthal, J.) (holding that SEC no-action letters "are nonbinding, persuasive authority" only and do not warrant *Chevron* deference). The APA provides for judicial review only as to "final agency action." 5 U.S.C. § 704. By their nature, no-action letters are informal, discretionary, and inherently staff-level statements about whether issuing staff might recommend that the five-member Commission vote to take action against particular regulated entities.

Under Rule 140.99(a)(2)'s express terms, CFTC staff no-action letters

17

concern only whether issuing staff may "recommend enforcement action to the Commission," are "entirely within the discretion of Commission staff," and "bind only the issuing Division" and "not the Commission or other Commission staff." CFTC divisional staff have not been delegated any authority under the CEA to grant any "license," "permit," or "approval" when issuing no-action letters. Both the 2014 no-action letter and the August 4, 2022 withdrawal issued by DMO staff are entirely consistent with that limited scope of no-action relief. *See, e.g.*, Am. Compl. Ex. 1 at 5–6; Am. Compl. Ex. 2 at 1–2 & n.4.

DMO's August 4, 2022 letter challenged by Plaintiffs thus does not reflect "final agency action": The Commission has not made any decisions about a hypothetical enforcement action against PredictIt's operators, and no-action letters carry no independent legal consequences. *See Bennett v. Spear*, 520 U.S. 154, 177–178 (1997); *accord, e.g.*, *Luminant Generation Co. v. EPA*, 757 F.3d 439 (5th Cir. 2014); *Soundboard Ass'n v. FTC*, 888 F.3d 1261 (D.C. Cir. 2018); *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940 (D.C. Cir. 2012).

Whoever is overseeing PredictIt.org (supposedly non-party Victoria University) understands this. The site's homepage prominently displays a banner that reads "Notice to traders: CFTC staff action on No-Action Letter." Click on it, and the first sentence that appears states: "The staff of the Commodity Futures Trading Commission (CFTC) has withdrawn the No-Action letter (NAL) issued to

18

[non-party] Victoria University of Wellington."  Nowhere does PredictIt.org refer to a "revocation" of any "license," "permit," or other formal Commission "approval."

Whoever is operating Predictit.org's Twitter account understands this difference too.  Mere days ago, on January 1, 2023, that account "tweeted" that Plaintiff Aristotle International, Inc. has "applied to the CFTC for permission to operate a Designated Contract Market" that would be rebranded as "'PredictIt Exchange,'" expressing "hope [for] approval in the coming months" as "becoming a regulated entity has been a long-time goal of the PredictIt team."  True and correct copies of that Notice and Twitter thread are attached as "Exhibit 4" and "Exhibit 5."

Again, Victoria University is not here to explain.

Plaintiffs' motion does not address the absence of "final agency action" in much detail.  To the extent that threshold failing is discussed, Plaintiffs rely primarily on *Data Marketing Partnership v. U.S. Department of Labor*, Mot. at 2–3, 16–17 (citing 45 F.4th 846 (5th Cir. 2022)), which is not on point.  That case involved a binding legal interpretation about the scope of ERISA preemption issued by Department of Labor staff acting pursuant to inapposite delegated authority; it in no way undermines the decades of unbroken case law holding that staff no-action letters are non-reviewable.  Among other notable differences,

unlike in *Data Marketing Partnership*, here there is no delegation of CEA authority to CFTC staff and nothing in DMO's original letter or the withdrawal bears the "force of law." *Cf. Requests for Exemptive, No-Action and Interpretive Letters*, 63 Fed. Reg. 3285, 3285 (Jan. 22, 1998) (codifying longstanding practice of informal communications from CFTC staff through no-action letters).

Moreover, Plaintiffs' *Data Marketing Partnership* argument appears nowhere in their preliminary-injunction briefing below, and reflects an about-face from what they told the Magistrate Judge. *See* Ex. 2 at 55:18–56:17 (identifying *Chicago Board of Trade* as Plaintiffs' "best case" on final agency action). The supposedly "recent" nature of that decision is no excuse. *Cf.* Mot. at 2. *Data Marketing Partnership* was published on August 17, 2022—two weeks before Plaintiffs filed suit, one month before their preliminary-injunction motion, and more than four months before this "appeal." The choice to change tack on this critical—indeed, dispositive—threshold issue only now, while unavailing, underscores Plaintiffs' failure to seek Rule 8 or similar relief in the District Court.

### ii.    CFTC staff no-action letters are "committed to agency discretion by law."

Because CFTC staff no-action letters reflect sensitive and inherently discretionary judgments about whether to recommend civil prosecutions, they are independently unreviewable under 5 U.S.C. § 701(a)(2). *See Chicago Bd. of*

*Trade*, 883 F.2d at 530 (holding that challenged no-action letter "is a classic illustration of a decision committed to agency discretion").

Plaintiffs' motion does not address 5 U.S.C. § 701(a)(2), which is independently dispositive.

### iii.    The third-party Plaintiffs lack Article III standing to assert claims on non-party Victoria University's behalf.

Victoria University, the sole recipient and "the Beneficiary," 17 C.F.R. § 140.99(a)(2), of the 2014 no-action letter, has never been a party to this litigation.  The exclusively third-party Plaintiffs, who include PredictIt's corporate "services providers," individual PredictIt traders, and academics, lack Article III standing.  Even taking as true their alleged downstream economic harms, Plaintiffs have failed to show either "causation," as those harms all flow from Victoria University's speculative, independent decisional calculus whether to continue operating the PredictIt market in some form; or "redressability," as it is similarly speculative whether Victoria University will continue or resume PredictIt's operations regardless of any injunctive relief against the CFTC.  *See generally Nat'l Wrestling Coaches Assoc. v. Dep't of Educ.*, 366 F.3d 930 (D.C. Cir. 2004).

Plaintiffs' Motion does not address the independently dispositive lack of Article III standing either.

**C. The alleged harms are not irreparable.**

Plaintiffs' Motion instead focuses on the supposed harms underlying their "now-emergency" situation. *See* Mot. 11–13 & Ex. 1. Citing supposed market distortions and compliance costs, Plaintiffs assert that they face "irreparable" economic losses because they cannot recover money damages against the United States. *Id.* at 13 (citing *Wages and White Lions Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021)). Not so. Plaintiffs still "have recourse" for damages "in the form of subsequent civil suits," if warranted, through breach-of-contract actions against the relevant counterparty. *See, e.g.*, *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012); Am. Compl. ¶ 27 (alleging that "Victoria University has entered into a market servicing agreement with Aristotle" and "[p]ursuant to that agreement" traders "enter into a contract with Aristotle").

**D. The balance of equities and public interest disfavor injunctive relief.**

Plaintiffs' discussion of the equities and public interest duplicate their merits and irreparable-harm arguments. *See* Mot. at 18–19. They are wrong for the same reasons.

By contrast, were this Court to hold—for the first time ever—that a staff no-action letter or withdrawal thereof is judicially reviewable, that would deal a major blow to a valuable and long-standing agency practice. CFTC staff have for decades offered similarly non-binding informal advice, orally and in writing, to

22

market participants on sundry topics affecting U.S. derivatives markets. 63 Fed.

Reg. at 3285. Suddenly subjecting no-action letters to full-dress APA review

"might well discourage the practice of giving such opinions" at all, resulting in "a

net loss of far greater proportions to the average citizen than any possible gain

which would accrue." *Taylor-Callahan-Coleman Cntys. Dist. Adult Prob. Dep't v.*

*Dole*, 948 F.2d 953, 959 (5th Cir. 1991) (quotation omitted).

### E. Injunctive relief is unavailable to preempt a hypothetical Commission enforcement action.

Finally, by seeking to enjoin the Commission from interfering with

PredictIt's operations on the basis of the 2014 no-action letter, Plaintiffs would

effectively preempt an as-yet-hypothetical Commission decision to authorize

enforcement proceedings.[5] The proper course is, instead, to raise any affirmative

defenses the responsible parties may have if the Commission does bring a case.

*See, e.g.*, *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599 (1950) ("[I]t has

never been held that the hand of government must be stayed until the courts have

an opportunity to determine whether the government is justified in instituting suit

---

[5] To be clear, the Commission is not now and has never been bound by any staff position taken in the 2014 staff no-action letter, *see* 17 C.F.R. § 140.99(a)(2), and therefore retains the independent authority to authorize (or not) an enforcement action at any time should such an action be deemed warranted, whether before, on, or after February 15, 2023.

in the courts."); *Sec'y of Lab. v. Twentymile Coal Co.*, 456 F.3d 151, 157 (D.C. Cir. 2006).

## CONCLUSION

For these reasons, this Court should grant the motion to dismiss and/or deny the motion for injunction pending appeal.

Respectfully submitted,

/s/ *Kyle M. Druding*

Robert A. Schwartz
  *General Counsel*
Anne W. Stukes
  *Deputy General Counsel*
Kyle M. Druding
  *Assistant General Counsel*
U.S. COMMODITY FUTURES
TRADING COMMISSION
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC  20581
(202) 418-5127
kdruding@cftc.gov

January 10, 2023

## CERTIFICATE OF COMPLIANCE

1.    I hereby certify that this Motion and Opposition complies with the type-volume limits of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P.  27(a)(2)(B) and 32(f), this brief contains 5,188 words.

2.    I hereby certify that this Motion and Opposition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Times New Roman.

/s/ *Kyle M. Druding*
Kyle M. Druding

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2023, I caused the foregoing Motion and Opposition to be served on the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit and on Plaintiffs-Appellants, using the Court's CM/ECF system, as all participants in this case are registered CM/ECF users.

/s/ *Kyle M. Druding*
Kyle M. Druding