**No. 22-51124**

# UNITED STATES COURT OF
# APPEALS FOR THE FIFTH CIRCUIT

KEVIN CLARKE; TREVOR BOECKMANN; HARRY CRANE; CORWIN SMIDT; ARISTOTLE INTERNATIONAL, INCORPORATED; PREDICT IT, INCORPORATED; MICHAEL BEELER; MARK BORGHI; RICHARD HANANIA; JAMES D. MILLER; JOSIAH NEELEY; GRANT SCHNEIDER; AND WES SHEPHERD,
*Plaintiffs-Appellants,*

v.

COMMODITY FUTURES TRADING
COMMISSION,
*Defendant-Appellee.*

On appeal from the United States District Court for the
Western District of Texas (1:22-cv-00909-LY)

## PLAINTIFFS-APPELLANTS' OPENING BRIEF

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
T: (202) 778-2204
medney@huntonak.com

Shannen W. Coffin
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
T: (202) 429-3000
scoffin@steptoe.com

January 25, 2023

John J. Byron*
STEPTOE & JOHNSON LLP
227 West Monroe Street, Suite 4700
Chicago, Illinois 60606
T: (312) 577-1300
jbyron@steptoe.com
*Application for admission pending*

*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

No. 22-51124

KEVIN CLARKE, ET AL.,
*Plaintiffs-Appellants,*
v.
COMMODITY FUTURES TRADING COMMISSION,
*Defendant-Appellee.*

The undersigned counsel of record for Plaintiffs-Appellants certifies that the below listed persons and entities have an interest in the outcome of this case as described in the fourth sentence of Fifth Circuit Rule 28.2.1.   These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**Appellants**

Kevin Clarke, Trevor Boeckmann, Harry Crane, Corwin Smidt, Michael Beeler, Mark Borghi, Richard Hanania, James D. Miller, Josiah Neeley, Grant Schneider, Wes Shepherd, Predict It, Inc., and Aristotle International, Inc.

**Appellee**

Commodity Futures Trading Commission

**Counsel for Appellants**

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
T: (202) 778-2204
medney@huntonak.com

John J. Byron
STEPTOE & JOHNSON LLP
227 West Monroe Street
Suite 4700
Chicago, Illinois 60606
T: (312) 577-1300
jbyron@steptoe.com

Shannen W. Coffin
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
T: (202) 429-3000
scoffin@steptoe.com

**Counsel for Appellee**

Robert A. Schwartz
*General Counsel*
Anne W. Stukes
*Deputy General Counsel*
Kyle M. Druding
*Assistant General Counsel*
U.S. COMMODITY FUTURES
TRADING COMMISSION
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC 20581
Phone: (202) 418-6024
Fax: (202) 418-5127
kdruding@cftc.gov

In accordance with Federal Rule of Appellate Procedure 26.1, the undersigned counsel certifies that Plaintiff-Appellant Aristotle International, Inc. is the parent corporation of Plaintiff-Appellant Predict It, Inc. The undersigned further certifies that none of the other Plaintiffs-Appellants, including Plaintiff-Appellant Aristotle International, Inc., has any parent corporation, and no publicly held corporation holds more than 10% of their stock.

*/s/ Michael J. Edney*
Michael J. Edney
*Counsel of Record for Plaintiffs-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

The Court has expedited merits briefing in this case and calendared this case for oral argument on February 8, 2023.   ECF No. 38.   The apparent goal of that scheduling is to ensure that the case is heard prior to the deadline the CFTC has set for closing the PredictIt Market: February 15, 2023.   Plaintiffs-Appellants agree that oral argument will aid in resolving the important legal questions presented in this case.   This case presents a novel assertion that an agency order to close a trading market, and to liquidate investments made on that market, is not judicially reviewable.   Oral argument will help clarify what constitutes final agency action subject to review under the Administrative Procedure Act.   Oral argument will also allow the Court to obtain answers to any questions it may have about the relief requested in this case.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES............................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS....................................................................... iv

TABLE OF AUTHORITIES ................................................................. vi

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATEMENT OF THE ISSUES .............................................................5

STATEMENT OF THE CASE.................................................................6

    A.  The CFTC Authorizes the Establishment of the PredictIt Market...............6

    B.  The CFTC Abruptly Shutters the PredictIt Market. ......................7

    C.  Market Investors, Market Operators, and Academics Studying Market Data Seek a Preliminary Injunction to Stop Increasing Harm from the CFTC's Closure Mandate. ........................................................................8

SUMMARY OF THE ARGUMENT.....................................................14

ARGUMENT .......................................................................................19

I.   The District Court Erred by Failing to Enjoin Enforcement of the CFTC's Mandate to Liquidate All Contracts by February 15, 2023...............................19

    A.  Appellants Are Likely to Succeed on the Merits of Their Administrative Procedure Act Claims. .............................................................20

        1.  The Mandate to Close the PredictIt Market Is "Arbitrary and Capricious." ............................................................................21

        2.  The CFTC Has Not Found a Way to Authorize and Then to Shutter Entire Markets Without Having to Explain Itself or Endure Any Judicial Scrutiny...................................................................24

        3.  The Agency Failed to Follow Statutorily Mandated Process When Revoking the Market's Permission to Operate....................................32

        4.  Victoria University's Absence Does Not Spoil Appellants' Standing..34

    B.  An Injunction Is Necessary to Prevent Irreparable Harm. ..........................37

C.  The Balance of the Equities and Public Interest Weigh Heavily in Favor of an Injunction........................................................................................................40

II.  The Court Should Pause the Agency's Decision Pending Judicial Review Pursuant to 5 U.S.C. § 705. ...............................................................................41

III. This Court's Mandamus Authority Can Fill Any Asserted Gaps in Direct Appellate Jurisdiction to Address the CFTC's Looming and Arbitrary Closure Deadline.........................................................................................................42

CONCLUSION ........................................................................................................45

CERTIFICATE OF SERVICE .............................................................................48

CERTIFICATE OF COMPLIANCE ....................................................................49

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amin v. Mayorkas*, <u>24 F.4th 383</u> (5th Cir. 2022) ................................................. 25, 26

*Atchafalaya Basinkeeper v. United States Army Corps of Eng'rs*,
  <u>894 F.3d 692</u> (5th Cir. 2018) .................................................................................21

*Atl. Richfield Co. v. United States*, <u>774 F.2d 1193</u> (D.C. Cir. 1985) ...................33

*Bd. of Trade of Chicago v. SEC*, <u>883 F.2d 525</u> (7th Cir. 1989) ........... 16, 28, 29, 37

*Bennett v. Spear*, <u>520 U.S. 154</u> (1997).................................................. 25, 26, 35, 37

*Biden v. Texas*, <u>142 S. Ct. 2528</u> (2022) ................................................................27

*BST Holdings, L.L.C. v. OSHA*, <u>17 F.4th 604</u> (5th Cir. 2021)...............................14

*Carson v. American Brands, Inc.*, <u>450 U.S. 79</u> (1981)...........................................42

*Chamber of Com. v. U.S. Dep't of Lab.*, <u>885 F.3d 360</u> (5th Cir. 2018) .................14

*Changji Esquel Textile Co. v. Raimando*, <u>40 F.4th 716</u> (D.C. Cir. 2022)..............21

*Clarke v. Commodity Futures Trading Comm'n*, No. 22- 51124
  (5th Cir. Jan. 17, 2023) ....................................................... 4, 12, 19, 42

*Cmty. Fin. Servs Ass'n of Am. v. CFPB*, <u>51 F.4th 616</u> (5th Cir. 2022) ..................14

*Data Mktg. P'ship v. U.S. Dep't of Labor*, <u>45 F.4th 846</u> (5th Cir. 2022)........ passim

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  <u>140 S. Ct. 1891</u> (2020)................................................................................. passim

*Dist. Hosp. Partners, LP v. Burwell*, <u>786 F.3d 46</u> (D.C. Cir. 2015) .......................24

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, <u>561 U.S. 477</u> (2010) ..26

*Frozen Food Express v. United States,* <u>351 U.S. 40</u> (1956)....................................30

*Gallagher & Ascher Co. v. Simon*, <u>687 F.2d 1067</u> (7th Cir. 1982) ......................33

*Heckler v. Chaney*, <u>470 U.S. 821</u> (1985) ........................................................ 16, 28

*In re Deepwater Horizon*, <u>732 F.3d 326</u> (5th Cir. 2013) .........................................21

*In re Hood*, <u>135 F. App'x 709</u> (5th Cir. 2005)........................................................44

*In re Lloyd's Register N. Am., Inc.*, <u>780 F.3d 283</u> (5th Cir. 2015)...........................45

*In re Sch. Asbestos Litig.*, <u>977 F.2d 764</u> (3d Cir. 1992) .................................. 44, 45

*In re United States ex rel. Drummond*, 886 F.3d 448 (5th Cir. 2018)....................44

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008).................. 43, 45

*In re Wilson*, 810 F. App'x 224 (4th Cir. 2020)........................................44

*Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) .........................................14

*Johnson v. Rogers*, 917 F.2d 1283 (10th Cir. 1990)...............................44

*Kixmiller v. SEC*, 492 F.2d 641 (D.C. Cir. 1974)...................................28

*Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir. 1986) .......................20

*Louisiana. v. U.S. Army Corps of Eng's*, 834 F.3d 574 (5th Cir. 2016)...................30

*Mach Mining, LLC v. EEOC*, 575 U.S. 480 (2015)...................................31

*Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020)............3

*McCoy v. La. State Bd. of Ed.*, 332 F.2d 915 (5th Cir. 1964) ...............................3, 4

*Moore v. Brown*, 868 F.3d 398 (5th Cir. 2017) ................................... 19, 20

*Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602 (5th Cir. 2018)..........................35

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.*
  *Auto Ins. Co.*, 463 U.S. 29 (1983) ..................................................... 22, 23

*Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441 (9th Cir. 1992) ......................3

*Nken v. Holder*, 556 U.S. 418 (2009) ...........................................40

*PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018)...............................14

*Rollerson v. Brazos River Harbor Navigation Dist. of Brazoria Cnty.*,
  6 F.4th 633 (5th Cir. 2021) ..................................................... 29, 36

*Ruiz v. Estelle*, 650 F.2d 555 (5th Cir. 1981)........................................21

*Sackett v. EPA*, 566 U.S. 120 (2012) ........................................... passim

*State of Tex. v. Seatrain Int'l, S.A.*, 518 F.2d 175 (5th Cir. 1975)..........................21

*Sw. Elec. Power Co. v. EPA*, 920 F.3d 999 (5th Cir. 2019) ...................................23

*Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021)................................... 22, 23

*Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019).....................................30

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016)................................... 39, 42

*Texas v. United States*, 40 F.4th 205 (5th Cir. 2022)...........................................22

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016)........ 18, 25, 26, 27

*W. Ill. Home Health Care, Inc. v. Herman*,
  150 F.3d 659 (7th Cir. 1998) ....................................................... 26, 29

*Wages & White Lion Invs., L.L.C. v. FDA*,
  16 F.4th 1130 (5th Cir. 2021)……………………………………22, 29, 39, 42

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361 (2018) ...............15

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978)...................................................43

**Statutes**

28 U.S.C. § 1292 .............................................................................................................3

28 U.S.C. § 1331 .............................................................................................................3

5 U.S.C § 558 ............................................................................................... 33, 34

5 U.S.C. § 551 ...............................................................................................................33

5 U.S.C. § 701 .................................................................................................................3

5 U.S.C. § 702 ............................................................................................... 18, 36

5 U.S.C. § 705 ............................................................................................... 41, 42

5 U.S.C. § 706 ............................................................................................... 15, 21, 33

7 U.S.C. § 13 ................................................................................................................30

7 U.S.C. § 2 ..................................................................................................................14

**Other Authorities**

*Arbitrary*, WEBSTER'S THIRD NEW INTERNATIONAL
  DICTIONARY (1981) .............................................................................................24

**Treatises**

Wright & Miller, Federal Practice and Procedure § 2962 (3d ed.) ...........................3

Wright & Miller, Federal Practice and Procedure § 3933.1 (3d ed.) .......................43

**Regulations**

17 C.F.R. § 140.99 ...................................................................................... 6, 36

## **INTRODUCTION**

The PredictIt Market provides a platform for investors to trade contracts predicting the likely outcome of elections and other significant political events.   In 2014, the Commodity Futures Trading Commission authorized its establishment. This case arises from an August 4, 2022 CFTC decision that ordered the Market to close and to force all traders out of their investments by 11:59 PM on February 15, 2023.  ROA.153.   Many of those investments turn on political events that will occur well after February 2023, including the 2024 presidential elections.

The Commission's decision is arbitrary and capricious in violation of the Administrative Procedure Act.

Throughout this case, the Commission has *never offered a substantive defense of its decision*.   Instead, the Commission has claimed its decision is insulated from judicial review, including under the "final agency action" doctrine.   The Commission is wrong.   Its decision mandated, in no uncertain terms, closure of the Market and is not subject to appeal within the agency.

Appellants asked the district court for a preliminary injunction to permit approximately 75 contracts[1] that existed on the date of the closure mandate to

---

[1]  Since Appellants filed their motion for a preliminary injunction in September, about ten contracts which might have extended past February 15 in fact settled because the subject events occurred. Thus, as of today, roughly 65 contracts will remain open on the cut-off date.

continue to trade beyond February 15, while the judicial system resolved this case. The district court did not act on this motion while irreparable harm mounted.

This Court should reverse the district court's effective denial of the motion and remand with instructions to enjoin the Commission's mandate to liquidate all pending Market contracts by February 15, 2023.

## **JURISDICTIONAL STATEMENT**

Subject-matter jurisdiction exists in the district court under 28 U.S.C. § 1331 because Appellants' causes of action arise under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, a law of the United States.

This Court has jurisdiction because the district court effectively "refused" Appellants' request for a preliminary "injunction." 28 U.S.C. § 1292(a)(1). A motion for preliminary injunction is constructively denied for the purposes of Section 1292(a)(1) "when a court declines to make a formal ruling on a motion for a preliminary injunction, but its action has the effect of denying the requested relief." Wright & Miller, Federal Practice and Procedure § 2962 (3d ed.). Accordingly, this Court and other courts of appeals have exercised appellate jurisdiction when district courts have delayed ruling on a preliminary injunction request while significant portions of the harm that relief would prevent occurs. *See*, *e.g.*, *McCoy v. La. State Bd. of Ed.*, 332 F.2d 915, 916–17 (5th Cir. 1964) (not ruling on preliminary injunction request regarding school policies until after school session had begun had "practical effect" of denying injunction); *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1449–51 (9th Cir. 1992) (delaying hearing on preliminary injunction motion to stop construction until after it had begun "effectively denied the motion"); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 612 (6th Cir. 2020) (preliminary injunction motion effectively denied when district court showed no

indication of ruling before harm occurred).

The district court's failure to act here, while significant portions of harm occurred, similarly provides this Court with appellate jurisdiction.   After no hearing was scheduled on the fully briefed preliminary injunction motion for more than a month, Appellants filed a motion to "expedite" consideration of that motion and requested that it be heard and ruled upon by Christmas.   The expedition request documented accelerating irreparable harm in December and into January.   The district court did not respond to the motion to expedite.

While not mentioning or addressing the preliminary injunction request, the district court entered orders prioritizing certain procedural issues.   *See* ROA.216, 386.   In line with this Court's decision in *McCoy*, Appellants have taken an appeal from those orders, in addition to the district court's effective denial of the preliminary injunction request.   332 F.2d at 916–17 (orders prioritizing procedural question over consideration of a motion for a preliminary injunction are appealable).

These arguments were presented to this Court when the CFTC filed a motion to dismiss this appeal.   A motion panel of this Court resolved them, denying the CFTC's motion to dismiss.   *Clarke v. Commodity Futures Trading Comm'n*, No. 22-51124 (5th Cir. Jan. 17, 2023).   At the same time, the panel "carried with the case" Appellants' motion for injunction pending appeal or, in the alternative, petition for mandamus.   *Id.*

## STATEMENT OF THE ISSUES

The PredictIt Market provides a platform for investors to trade contracts predicting the likely outcome of elections and other significant political events. The Commodity Futures Trading Commission, in a 2014 decision, authorized the Market to open. In "CFTC Letter 22-08" dated August 4, 2022, the Commodity Futures Trading Commission ordered the Market to close and to liquidate all investor contracts before Midnight on February 15, 2023. The decision summarily stated that conditions of the CFTC's decision authorizing the Market had been violated, but provided no explanation of how or of why closing the Market and forcing contract liquidation is the appropriate remedy. The district court did not act on a preliminary injunction request as the closure date approached, traders departed the Market, and compliance costs mounted.

1.    Is a CFTC decision—that mandated the PredictIt Market to close and that cannot be further appealed within the agency—subject to judicial review?

2.    Did the district court err by failing to grant a preliminary injunction to preserve a functioning PredictIt Market while the courts considered a challenge to a CFTC decision ordering the Market to close?

## STATEMENT OF THE CASE

**A.    The CFTC Authorizes the Establishment of the PredictIt Market.**

Since 2014, the PredictIt Market has provided members of the public an opportunity to make small-scale investments based on their predictions of future elections and other significant political events.   That trading activity was designed to and has generated troves of data for academic study.

The Market was born from a 2014 CFTC ruling.   That ruling approved a formal application of Victoria University of Wellington, New Zealand, for permission to establish the Market.   ROA.145.   The ruling took the form of "no-action relief," a category of agency decision expressly provided for in the Commission's regulations.  *Id.*; *see also* 17 C.F.R. § 140.99.

The limitations built into the Market ensured it would be "small scale." ROA.145.   No one can invest more than $850 in any one contract.  And each contract market is limited to 5000 participants.    These rules were designed to balance providing data to academics on the public's investment-backed predictions regarding political events, while giving no one market participant too great a financial stake in any one election.    The data generated by the Market offer researchers a wealth of information that has advanced the fields of microeconomics, political behavior, computer science, and game theory.    *See* ROA.165-67; ROA.191-93; ROA.457-60.

The computer systems and compliance infrastructure to set up the PredictIt Market were neither uncomplicated nor inexpensive to build.   Once the CFTC approved the University's application, the University and its partners—Appellants Aristotle Inc. and Predict It, Inc.—("Market Operators") invested millions to set up those systems and to hire and train the staff to run them.   ROA.131.   Once those systems were in place, tens of thousands of individual traders purchased event contracts offered by the Market.

Take those contracts affected by the requested preliminary injunction as an example:  As of August 2022 (when the CFTC mandated the Market's closure), 14,478 investors held positions in 75 contracts that predicted election outcomes or other significant political events that likely would occur after February 15, 2023. ROA.134.   Most prominent are those concerning the outcome of the 2024 presidential election.   The traders in those contracts made their investments in good faith belief that the Market was authorized by the CFTC and the contracts they purchased could trade until they settled on the occurrence of the relevant election or event.   ROA.158-59.

## B.    The CFTC Abruptly Shutters the PredictIt Market.

On August 4, 2022, the CFTC ordered the PredictIt Market to close.   In doing so, the CFTC specified in detail when it must close.   The CFTC mandated the Market to liquidate tens of thousands of private trader investments before February 15, 2023.

ROA.152-53.  Its liquidation mandate was specific to the minute:

> To the extent the University is operating any contract market, as of the date of this letter, in a manner consistent with each of the terms and conditions provided in [CFTC] Letter 14-130, all of those related and remaining listed contracts and positions comprising all associated open interest in such market should be closed out and/or liquidated no later than 11:59 p.m. eastern on February 15, 2023.

*Id*.  It mandated liquidation even though tens of thousands of investments turn on elections or other political events occurring after February 15.

For throwing traders out of their contracts prematurely, the CFTC's letter gave only the following reason:  The Market "has not [been] operated . . . in compliance with the terms of" the agency decision authorizing the Market's opening.  ROA.153. The letter provided no detail of when or how any violation occurred, much less an explanation that closing the Market and forcing the liquidation of so many contracts is the appropriate way to address any alleged violation.   Nor did the CFTC explain why at least the then-existing contracts could not continue to trade until the relevant elections occur, even if entirely new contracts might be barred.

### C.   Market Investors, Market Operators, and Academics Studying Market Data Seek a Preliminary Injunction to Stop Increasing Harm from the CFTC's Closure Mandate.

After inquiries to the Commission asking to reverse its closure mandate went unanswered, PredictIt Market investors, academics who study Market data, and the companies operating the Market promptly sued the Commission.  They challenged the agency's decision to close the Market as arbitrary and capricious, and as the

revocation of a license without required process, in violation of the Administrative Procedure Act. ROA.9-35; *see also* ROA.217-47. To address a sequence of escalating harmful events arising from the decision, they sought a preliminary injunction against the mandate that contracts be liquidated early, by February 15, 2023. Although Appellants also challenged the CFTC's decision to bar the offering of new contracts about new elections or political events, they limited their request for a preliminary injunction to allowing contracts that had been offered as of August 4, 2022, to trade while the underlying proceeding was pending.

This request is targeted to prevent the worst of the harm caused by the agency's decision and to preserve some form of a market for the judicial system to save, if it finds the agency's mandate to close in violation of the Administrative Procedure Act. As a general matter, Market investors purchased contracts before the CFTC's decision to end the Market, in the expectation that they would continue to trade until their deciding events. *See, e.g.*, ROA.397-98. From early on, the CFTC's liquidation mandate has distorted and disturbed Market trading and continues to do so today. Contacts began trading at prices disconnected from predictions of election outcomes, as traders attempted to salvage their investments. ROA.398-400. Appellants today cannot exit their contracts except at a loss as compared to what they believe they would have recovered.

Faced with these market distortions, traders have exited the Market in

numbers that have left the Market with historically low liquidity.   Approximately 2000 traders withdrew all of their funds and closed their accounts in December alone.   ECF No. 6, App., Declaration of John Phillips ¶ 4 (Dec. 31, 2022) (ECF p. 117) (J. Phillips Decl.).   Also in December, the number of active daily traders decreased to 35 percent, and trading volume to 24 percent, of long-term averages. *Id.*

The Appellant companies that operate the Market also projected significant compliance costs to prepare for the February 15 liquidation deadline.  They include building systems for crashing out contracts on a date certain, rather than the occurrence of the elections or events they predict.  Appellants documented for the district court that those investments started in December and would increase as the deadline approached.  ROA.389-90, 402-06.

In addition, the distortions are corrupting the data related to event contracts predicting the outcome of the 2024 presidential elections that researchers, including the three university professor Appellants, intend to study.  ROA.166-67, 192.  As trader volume on the Market decreases and traders focus on getting out of the Market ahead of the CFTC deadlines, researchers are unable to assume that investors are trading based on what they believe the outcome of the election will be.  ROA.192.

The motion for a preliminary injunction was filed in September, and briefing was completed on October 20, 2022. ROA.308.  When the district court had not

scheduled a hearing or otherwise reacted to the motion, Appellants filed a motion to expedite its consideration on November 18, 2022. ROA.387. Therein, Appellants projected that a significant swath of irreparable harm—in the form of disruption to trading efficiency, the stranding of traders with prices that would no longer be linked to the predicted outcomes of future elections, and compliance costs that could no longer be avoided—would occur in late December. ROA.389-90, 403. If the district court was not inclined to resolve the preliminary injunction request by Christmas, Appellants informed the court that they would regard the motion as effectively denied. ROA.392. The district court did not respond to the motion to expedite.

In the meantime, the magistrate judge held a hearing on the CFTC's motions to transfer and to dismiss. On December 12, the magistrate judge issued a report and recommendation urging the district court to grant the CFTC's motion to transfer the case to the District of Columbia. The report and recommendation contained no plan for avoiding irreparable harm while the case was being transferred. Neither the magistrate judge nor the CFTC contested in any way that venue was proper in the Western District of Texas. ROA.267, 560. On December 27, 2022, Appellants filed an objection to the report and recommendation with the district court.

Appellants appealed the district court's effective denial of the preliminary injunction motion on December 23, 2022. On the first business day after the docketing of the appeal, Appellants moved for an injunction pending appeal or, in

the alternative, a writ of mandamus. ECF No. 6. Appellants, there, explained that the irreparable harm expected in December—from unrecoverable compliance costs to degradation of the Market—occurred and that the district court watched it happen, without scheduling the preliminary injunction motion for a hearing. Appellants also submitted evidence that more and worse harm was yet to come, as decreases in Market trading volume were on a track to risk the Market effectively seizing up in the two to four weeks prior to the February 15, 2023, deadline. ECF No. 6, App., J. Phillips Decl. ¶ 8 (ECF pp. 118-19). Whether or not the Market would have enough volume to preserve it through January, the impending February 15, 2023, deadline would certainly leave the courts without a Market to save.

The Commission responded by moving to dismiss the appeal for lack of jurisdiction. ECF No. 20-1. Therein, the agency asserted that this Court could not yet exercise appellate jurisdiction over the failure to grant a preliminary injunction because the district court was not given enough time to give some indication of what it would do.

On January 17, the Court denied the Commission's motion to dismiss. In response to the request for relief pending appeal, the Court "expedited forthwith" the appeal "to the next available merits panel" and "carried with the case" Appellants' request for an injunction pending appeal or mandamus relief. *Clarke v. Commodity Futures Trading Comm'n*, No. 22-51124 (5th Cir. Jan. 17, 2023). The

Court then expedited briefing and scheduled the case for oral argument on February 8, 2023, one week before the CFTC's closure deadline. The PredictIt Market promptly notified traders of the Court's plans to hear the case.

## SUMMARY OF THE ARGUMENT

At stake in this case is a breathtaking arrogation of governmental power to the administrative state.  The Commodity Futures Trading Commission is an administrative agency, with unelected leadership and claiming independence from the one member of the Executive Branch who is elected.  7 U.S.C. § 2(a)(2) (CFTC is an "independent agency of the United States Government"); *see also PHH Corp. v. CFPB*, 881 F.3d 75, 92, 94 (D.C. Cir. 2018).  Here, the CFTC asserts it can decide to close a long-standing events market—and to throw tens of thousands of traders out of their investments—and answer to no one, not even the courts.

Congress invested the CFTC with authority to make momentous decisions that affect the lives and businesses of Americans.  And this Court has raised concerns about whether and under what conditions granting so much authority to those neither elected by nor directly accountable to the People is consistent with our constitutional order.  *See, e.g., Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022); *Cmty. Fin. Servs Ass'n of Am. v. CFPB*, 51 F.4th 616 (5th Cir. 2022); *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021); *Chamber of Com. v. U.S. Dep't of Lab.*, 885 F.3d 360 (5th Cir. 2018).  If there is one thing that makes the delegation of tremendous governmental power to an administrative agency even remotely defensible, it is that the agency's decisions are subject to judicial review and will be overturned if determined to be "arbitrary, capricious," or "otherwise not in accordance with law."

5 U.S.C. § 706.  For that reason, the presumption that courts may review the behavior of administrative agencies is not easily overcome.  *See Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) ("[T]his Court has . . . long applied a strong presumption favoring judicial review of administrative action.").

In this case, the CFTC is trying to remove that one, crucial check on its sweeping authority.  To do so, the Commission is turning to the "final agency action" doctrine.  According to the CFTC, the agency managed to authorize the opening of an entire political event market, to set rules for its operation, to close it after eight years, and to mandate exactly how and when it must close and what must happen to the investments of tens of thousands of traders, without making a single decision that is subject to judicial review.  The reason, the agency says, is that its 2014 decision authorizing the Market was made in the form of "no-action relief," a form of decisionmaking the Commission delegated by regulation to its divisions.  Because the decision to birth the Market was made by a subordinate division and reserved the right for the Commission to later change course, the Commission claims that the decision to kill the Market is not final agency action that is subject to judicial review.

The CFTC is wrong.  A division or staff member of an agency is perfectly capable of making a decision that is final agency action.  The relevant question is whether that decision has the practical effect of shutting down a business or altering the behavior of a regulated entity and whether that decision can be appealed within

15

the agency.  *See Data Mktg. P'ship v. U.S. Dep't of Labor*, <u>45 F.4th 846, 854</u>–55 (5th Cir. 2022).  Here, the agency ordered the Market to close and prematurely to liquidate the investments of tens of thousands of traders, on pain of enforcement action if Market participants did not comply as and when directed.  And the decision cannot be appealed within the agency, which is the hallmark of final agency action. *See id.* at 853–55.

The CFTC has tried to suggest there is a nationwide vein of caselaw that places off-limits to the courts anything related to "no-action letters."  That is incorrect.  The CFTC has been leaning on cases where third parties are challenging decisions not to enforce agency regulations against competitors.  But these cases implement the Supreme Court's longstanding rejection of judicial orders seeking to force how an agency allocates its enforcement resources against others.  *See Heckler v. Chaney*, <u>470 U.S. 821, 826</u>–27 (1985).  These very cases recognize that the parties being regulated by no-action relief, being placed "under the gun" by its terms, present an entirely different question.  *Bd. of Trade of Chicago v. SEC*, <u>883 F.2d 525, 530</u> (7th Cir. 1989) (Easterbrook, J.).

On appeal here is the district court's failure to issue a preliminary injunction that would keep the Market alive while the courts determine whether the CFTC's decision violates the Administrative Procedure Act.   Of the four elements for granting a preliminary injunction, the CFTC only meaningfully contests the

likelihood of success due to its claim that its decision is insulated from judicial review.

Most remarkably, and perhaps unlike any other administrative review case ever encountered, the CFTC makes absolutely no effort to suggest its decision to end the Market reflects reasoned decisionmaking or is crucial to protecting the public interest.  An agency usually comes up with some list of public ills that would be effected by enjoining its decision, even for a short time.  But not here.

Nor does the CFTC contest that closing the Market will harm the companies who operate it, the traders who invested in its contracts, or the academics who study the data produced by it.  That harm is clearly irreparable, as it is caused by a government agency enjoying sovereign immunity from damages from its arbitrary actions.

The CFTC makes a hodgepodge of arguments linked to what the founder of the PredictIt Market—Victoria University of Wellington, New Zealand—should be doing.  The CFTC has claimed the mess of this Market's closing is not the CFTC's fault, as Victoria University should just ignore the order to close on February 15 and see if the Commission then opens an enforcement action against it.  The Supreme Court, however, has rejected time and again agency assertions that judicial review of agency decisionmaking must await an agency's affirmative effort to impose penalties. *See, e.g., U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600

(2016); *Sackett v. EPA*, <u>566 U.S. 120, 127</u> (2012).  The CFTC also says that only Victoria University has standing to bring this case, but has not joined as a formal party.  The undisputed evidence in the record, however, is that Victoria would not have closed this Market and crashed investors prematurely out of their contracts, absent the CFTC's arbitrary mandate.  And the Administrative Procedure Act permits any party "adversely affected or aggrieved by agency action" to challenge that action.  <u>5 U.S.C. § 702</u>.

That a preliminary injunction is necessary to prevent irreparable harm, is consistent with the balance of the equities, and is in the public interest would have been apparent to the district court, had it timely taken up the motion.   This Court should reject the notion that the CFTC has found a way to evade judicial review while opening and closing an entire political event market and determine that Appellants are likely to succeed on the merits.  This Court should then reverse the district court's failure to issue a preliminary injunction.

The Appellants are extraordinarily grateful for this Court's expedited consideration of the merits in this matter.   Oral argument will be held on February 8, 2023, just a week before the agency's February 15 deadline to close the Market.  Appellants are hopeful that the Court's announcement of the oral argument date will forestall a drop of market liquidity so severe that the Market will seize.  But time truly will be of the essence when oral argument occurs to avoid trading and

administrative chaos as the CFTC's deadline approaches.  Appellants respectfully request that the Court consider either (i) announcing quickly after oral argument a summary order reversing the district court and providing for a preliminary injunction, with a substantive opinion to follow or (ii) quickly granting the motion for injunction pending the resolution of this appeal, which a panel of this Court "carried with the case" and is pending.  *Clarke v. Commodity Futures Trading Comm'n*, No. 22-51124 (5th Cir. Jan. 17, 2023).

## ARGUMENT

### I.    The District Court Erred by Failing to Enjoin Enforcement of the CFTC's Mandate to Liquidate All Contracts by February 15, 2023.

The injunction requested below would have abated the disruption of prematurely terminating the Market's existing contracts and prevented the destruction of the Market before a court rules on the merits of Appellants' claims. In the face of Appellants' mounting and irreparable injuries, the district court did not act.   This Court should reverse and instruct the district court to grant Appellants' requested relief.

Whether to grant a preliminary injunction turns on the traditional four-factor test.  *See Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017).[2]    Each factor is

---

[2]  While trial courts have to assess "how much weight to give individual components of [the four-factor test] and to what direction the balance of equity tips," that discretion does not extend to whether or not to consider a motion for a preliminary injunction in the first instance. *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429,

met here.   The agency never meaningfully contested three of the factors, namely that there is a "substantial risk of irreparable harm if the injunction does not issue; that the threatened injury outweighs any harm that will result if the injunction is granted; and that the grant of an injunction is in the public interest."   *Moore*, 868 F.3d at 402–03.   Remarkably, the CFTC has made no effort to defend the substance of its decision to close the Market or to contend any public interest was at stake in whether that decision stood or fell.

The agency only meaningfully disputes the one remaining of the four factors, the requirement to show "a substantial likelihood of success on the merits."  *Id.*   For that factor, the agency primarily claims that technical doctrines keep the courts away from reviewing its decision to close the PredictIt Market.   As explained below, the CFTC's arguments are incorrect.

### A. Appellants Are Likely to Succeed on the Merits of Their Administrative Procedure Act Claims.

Appellants are likely to succeed on the merits.  The CFTC's decision to close the Market is simply not backed by the reasoned decisionmaking the Administrative Procedure Act requires.   And, contrary to the CFTC's claims, no doctrine insulates

---

1436 (7th Cir. 1986) ("During the course of deciding whether to grant the motion the district court must take a number of non-discretionary actions: (1) it must evaluate the traditional factors enunciated in the case law; (2) it must make factual determinations on the basis of a fair interpretation of the evidence before the court; and (3) it must draw legal conclusions in accord with a principled application of the law.").

from judicial review its very consequential decision to close the Market. In any event, the uncontested and strong showing on the other preliminary injunction factors should assuage any concerns the Court might have regarding Appellants' likelihood of success.[3] At a minimum, the Appellants have shown a substantial case on the merits involving a "serious legal question" regarding the final agency action doctrine, with the "balance of the equities favor[ing]" an injunction while any thorny legal questions are sorted. *In re Deepwater Horizon*, 732 F.3d 326, 344–46 (5th Cir. 2013); *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981).

### 1. The Mandate to Close the PredictIt Market Is "Arbitrary and Capricious."

The Administrative Procedure Act prohibits agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706; *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Data Mktg.*, 45 F.4th 846, 855 (citation omitted). Courts must "ensure that 'the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the

---

[3] *Changji Esquel Textile Co. v. Raimando*, 40 F.4th 716, 726 (D.C. Cir. 2022); *State of Tex. v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975) (holding that strong showings on some elements can compensate for others); *Atchafalaya Basinkeeper v. United States Army Corps of Eng'rs*, 894 F.3d 692, 696 n.1 (5th Cir. 2018) (holding open the availability of balancing strong showings on some preliminary injunction elements to address concerns about others).

relevant issues and reasonably explained the decision.'" *Id.* And this Court has stressed that "after *Regents*," arbitrary and capricious review "has serious bite." *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1136 (5th Cir. 2021); *Texas v. United States*, 40 F.4th 205, 226 (5th Cir. 2022); *Data Mktg.*, 45 F.4th at 856.

The CFTC's mandate to close the PredictIt Market manifestly fails these standards. The CFTC made no attempt below to demonstrate that its mandate to close the PredictIt Market was the product of reasoned decisionmaking or otherwise complied with the substantive requirements of the Administrative Procedure Act. Nor could it have for at least two reasons.

*First*, the Commission did not adequately explain the decision to close the Market. The Supreme Court has stated that any agency action "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983); *Regents of the Univ. of Cal.*, 140 S. Ct. at 1905 (agencies must act "based on a consideration of the relevant factors"); *Texas v. Biden*, 10 F.4th 538, 552 (5th Cir. 2021) ("[A]gency action [must] be reasonable and reasonably explained.").

Instead of reasonably explaining its decision, the CFTC's only explanation for closing the Market was to summarily state: "The University has not operated its

market in compliance with" the no-action relief decision. <u>ROA.153</u>. The letter includes no specific allegation of how limitations on the Market were violated, much less facts to support any such allegation. Also absent is any explanation of why suddenly closing the Market and mandating liquidation of all existing contracts is the appropriate solution for any alleged violation. In that vein, there is no evidence that the CFTC considered the effect of its chosen course of action on the Market's traders, who relied on the agency's permission for the Market to open and have no role in any undetailed assertion of a compliance lapse.

*Second*, the agency clearly failed to consider and explain its selection among alternatives of its chosen manner of closing the market. The Supreme Court and this Court have made clear that agencies must consider alternatives to the policy option chosen and explain why the course the agency selected is superior. *Regents of the Univ. of Cal.*, <u>140 S. Ct. at 1913</u>; *State Farm*, <u>463 U.S. at 43</u>; *Texas v. Biden,* <u>10 F.4th at 552</u>–53; *Sw. Elec. Power Co. v. EPA*, <u>920 F.3d 999, 1013</u> (5th Cir. 2019). The agency ordered all contracts to be liquidated by 11:59 PM on February 15, 2023. There is no indication of why this date was chosen. It appears picked from thin air, without regard for the timing of the events that settle the contracts. That is the definition of "arbitrary" action: "Coming about seemingly at random or by chance; determined by individual preference or convenience than by the necessity or intrinsic nature of something." *Arbitrary*, WEBSTER'S THIRD NEW INTERNATIONAL

DICTIONARY (1981).

Nor is there any indication the agency considered the obvious alternative to pushing all existing contracts out the door on some random Winter day: Barring the Market from offering contracts on brand new, previously-uncovered elections, but allowing those contracts already in play to trade until the elections they cover occur. That alternative would have at least spared the wholly unnecessary displacement of good-faith investments in dozens of existing contacts that depended on events likely to occur after February 15. An agency need not exhaust every alternative, but when another course of action is obvious, it must explain why that option is not appropriate. *Dist. Hosp. Partners, LP v. Burwell*, <u>786 F.3d 46, 59</u> (D.C. Cir. 2015). The agency blew through this requirement of the Administrative Procedure Act, and its mandate to close the PredictIt Market is arbitrary and capricious.

> **2.      The CFTC Has Not Found a Way to Authorize and Then to Shutter Entire Markets Without Having to Explain Itself or Endure Any Judicial Scrutiny.**

The CFTC has left any substantive defense of its decision along the side of the road. Instead, it told the district court and this Court, time and again, that its decision as to whether and how to shutter the PredictIt Market is "none of your business." In doing so, the CFTC invoked the "final agency action" doctrine. This Court should reject the CFTC's bid to exercise the power to authorize and then close an entire market with tens of thousands of investors, without any duty to explain

itself or judicial review.

The Supreme Court has instructed courts to take a "pragmatic" and flexible approach when assessing finality and the reviewability of agency action.  *Hawkes*, 578 U.S. at 599; *see Data Mktg.*, 45 F.4th at 853 (same).    An action that both "mark[s] the consummation of the agency's decisionmaking process" and is an action "from which legal consequences will flow" is final.    *Bennett v. Spear*, 520 U.S. 154, 178 (1997).   That the decision is made by a division or staff of the agency does not render it judicially unreviewable.  *See Data Mktg.*, 45 F.4th at 852; *Hawkes*, 578 U.S. at 596.   The key is whether the decision of agency staff has the practical effect of ending a business and whether that decision can be appealed to a higher power inside the agency.   *Bennett*, 520 U.S. at 178; *Data Mktg.*, 45 F.4th at 853–54; *Amin v. Mayorkas*, 24 F.4th 383, 390 (5th Cir. 2022).

1.    The agency decision's consequences could not have been starker.  Victoria University, Aristotle, and PredictIt built the PredictIt Market and invited traders to it only after first asking the CFTC for permission.   The CFTC granted the permission, explaining its decision to do so at great length and articulating detailed rules for the Market's operation.   CFTC Letter 22-08, dated August 4, 2022, pulled the rug out from under the Market and its traders.   It ordered the Market to close.  And it specified how it must close down to the minute, requiring the Market to liquidate all contracts by 11:59 PM on February 15, 2023.   It was the death warrant

for the Market and the investments of tens of thousands of traders.

2.    The decision was also unappealable within the agency and thus "mark[ed] the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178. The inability to appeal or seek review of an agency division's decision to a higher agency authority is the hallmark of final agency action. *See, e.g.*, Sackett, 566 U.S. at 127 (finding agency action was final when there was no "entitlement to further agency review"); *Data Mktg.*, 45 F.4th at 853 (staff opinion "consummated" the agency's "decisionmaking process . . . because it is not subject to further Agency review"); *Amin*, 24 F.4th at 390; *W. Ill. Home Health Care, Inc. v. Herman*, 150 F.3d 659, 662–63 (7th Cir. 1998).

No one contends that the August 4, 2022 mandate to shut down the PredictIt Market can be appealed within the agency.    The mandate to close was the end of the line at the Commission; the next stop is an enforcement action and penalties.    The Supreme Court has held repeatedly that impacted parties "need not await enforcement proceedings before challenging final agency action." *Hawkes*, 578 U.S. at 600; *see also Sackett*, 566 U.S. at 127; *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010) ("We normally do not require plaintiffs to bet the farm by taking the violative action before testing the validity of the law.").

3.    In proceedings below, the CFTC repeatedly fell back on a warning in

its 2014 decision authorizing the opening of the Market that the Commissioners themselves might go in a different direction and the agency could change its mind. ROA.149-50.   This Court should reject any such effort here.   First, this is an old administrative agency story, repeatedly dealt with by the courts.  Agency decisions regularly contain reservations of discretion, by one part of an agency or another, later to reverse course.  But "the Supreme Court has repeatedly rejected" the argument that "action isn't final because the agency can change its position." *Data Mktg.*, 45 F.4th at 854; *see also Sackett*, 566 U.S. at 127; *Hawkes*, 578 U.S. at 598; *Biden v. Texas*, 142 S. Ct. 2528, 2545 (2022). "Were it otherwise, no agency action would be final because an agency could always revisit it. And that can't be right." *Data Mktg.*, 45 F.4th at 854.

The CFTC's argument also mistakes what agency decision is being challenged here.  The Appellants are challenging CFTC Letter 22-08, dated August 4, 2022, ordering the Market to close and to liquidate all contracts by 11:59 PM on February 15, 2023.   That letter did not reserve some possibility that the Commission might change its mind and allow the Market to go forward.   ROA.44-45.   It announced, in a formal "CFTC Letter," that the PredictIt Market must close and specified what must happen to existing contracts and when.   Whatever caveats the 2014 letter authorizing the Market contained, they were absent from the CFTC's 2022 mandate closing the Market.

27

4.     That same error pervades the agency's effort to lump everything the CFTC has done to the PredictIt Market and its traders into an effort to judicially challenge a "no-action letter."   The CFTC says that allowing judicial challenges to no-action letters will overturn decades of precedent and open the floodgates to Administrative Procedure Act litigation.   ROA.424; *see also* ECF No. 20-1, at 17. But, again, Appellants are challenging the CFTC's 2022 order for the PredictIt Market to close, not the 2014 no-action letter authorizing it to open.

In any event, contrary to the CFTC's assertion, there is no line of cases making no-action letters, much less everything stemming from them, off limits to judicial review.   To make this claim, the agency leans hard on two cases.   *See* ROA.336 and Appellees' Motion to Dismiss Appeal, ECF No. 20-1, at 17   (citing *Bd. of Trade Chicago*, 883 F.2d at 529; *Kixmiller v. SEC*, 492 F.2d 641, 646 (D.C. Cir. 1974)). But both of those cases involved private citizens seeking to force the agency to take up its prosecutorial sword and enforce penalties against recipients of no-action letters.  Such cases have long been dead on arrival in the courts, as litigants and courts cannot force an agency to take up an enforcement action against another.  The Supreme Court made this clear in *Heckler v. Chaney*, on which the Seventh Circuit in *Board of Trade* heavily relied.  *See* 883 F.2d at 530.

That critical feature, however, is entirely absent here.  Appellants nowhere seek to superintend the agency's allocation of resources or prosecutorial choices.

Judge Easterbrook in *Board of Trade* recognized that when plaintiffs seek to forestall an unexplained administrative dictate that applies *directly to them*—putting them "under the gun" and placing hundreds of thousands of dollars "in jeopardy"—judicial review is available.  883 F.2d at 529–30.  And others courts have recognized that, when an agency does *that*—whether through its subordinate staff or otherwise and without providing any chance for further review—its behavior is subject to judicial review.  *See, e.g.*, *Sackett*, 566 U.S. at 127; *Rollerson v. Brazos River Harbor Navigation Dist. of Brazoria Cnty.*, 6 F.4th 633, 642 (5th Cir. 2021); *W. Ill. Home Health Care*, 150 F.3d at 662–63.

Nor is the 2014 "no-action" decision opening the Market some "discretionary" act of forbearance, from which the agency could change course at any time without explanation.  This Court has firmly rejected such claims, explaining that the Administrative Procedure Act requires that agencies explain themselves when altering what they claim to be policies of "non-enforcement" that are "entirely discretionary" and to consider the "reliance interests" that private parties have in those policies.  *Wages & White Lion Investments LLC v. FDA*, 16 F.4th 1130, 1139 (5th Cir. 2021) (relying on *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1910 (2020)); *Data Mktg.*, 45 F.4th at 854–55.  The CFTC did none of those things when discarding its approval of the PredictIt Market.  In particular, the CFTC showed no regard for the "reliance interests" of investors when they purchased

contracts expecting they would trade until their natural conclusion.   The labels of "no-action relief" or "discretionary non-enforcement" do not protect the CFTC's treatment of the PredictIt Market from judicial review.

5.    Legal consequences also flow from the agency's order for the Market to close and all contracts to be liquidated.    The CFTC's papers below make that clear. There, the agency explains that, if the Market operates past the February 15 deadline, its participants will be liable for a "willful violation of the CEA or CFTC regulations," which "is a felony."    ROA.355 (citing 7 U.S.C. § 13(5)).    "Legal consequences . . . flow from" an agency decision when it "forces the [regulated entity] either to alter its conduct, or expose itself to potential liability." *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019).   When an agency decision leads "affected private parties [ ] to believe that failure to conform will bring adverse consequences," the decision is final and subject to judicial review.    *Id*. at 442; *Louisiana. v. U.S. Army Corps of Eng's*, 834 F.3d 574, 584 (5th Cir. 2016) (stating that agency action that threatens "exposure to civil or criminal liability for failure to comply" with that action "inflict[s] legal consequences on [regulated parties]"); *see also Frozen Food Express v. United States,* 351 U.S. 40, 42–45 (1956) (holding agency action reviewable despite that it only explained what commodities an agency considered exempt from regulation, and it would have no effect unless and until the agency brought an enforcement action).

In short, the CFTC did not find some way to let its staff issue breathtakingly consequential decisions to create and then kill entire markets, without any judicial review of whether the agency acted arbitrarily or capriciously.   It certainly tried. An effort to do so was orchestrated by the Commissioners themselves, who each reviewed and were given the opportunity to object to the "CFTC Letter" ordering the PredictIt Market shuttered.   ROA.241, 312.   Our most basic principles of democratic accountability, however, block this effort.  Congress has delegated great authority over the daily lives of Americans to officials at administrative agencies whom no one elected.   But the condition of that deal is that those unelected bureaucrats will be supervised, at least by life-tenured, Senate-confirmed judges, to ensure that they have engaged in reasoned decisionmaking.   For that reason, judicial review of agency decisions is the rule, rather than the exception.   *See Regents of the Univ. of Cal.*, 140 S. Ct. at 1905 ("The APA establishes a basic presumption of judicial review for one suffering legal wrong because of agency action."); *Sackett*, 566 U.S. at 130 ("The APA's presumption of judicial review is a repudiation of the principle that efficiency of regulation conquers all."); *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 488–89 (2015) ("Absent [judicial] review, the Commission's compliance with the law would rest in the Commission's hands alone.").

This Court already has pulled all the threads above together and rejected an almost identical administrative agency effort to avoid judicial review.  In *Data*

*Marketing Partnership v. U.S. Department of Labor*, the plaintiffs challenged an advisory opinion issued by the Department of Labor. <u>45 F.4th at 852</u>–53. The agency, as here, argued that the opinion was not final agency action because the opinion was issued by staff, and the staff said the agency could change its position. *Id.* at 854–55. This Court rejected all of those arguments. *Id.* It did not matter that the agency opinion was issued by staff or that the agency expressly retained discretion to reverse course. What mattered was that the opinion could not be appealed within the agency and portended enforcement action if the regulated party strayed outside the opinion's line in the sand. *Id.* So too here. In an unappealable decision, the CFTC directed the Market's closure in no uncertain terms and enforcement action looms if compliance does not follow as and when directed.

### 3.   The Agency Failed to Follow Statutorily Mandated Process When Revoking the Market's Permission to Operate.

In the Administrative Procedure Act, Congress recognized that certain administrative agency decisions have such significant consequences for the governed that additional procedural protections apply.   Specifically, Congress required that, before revoking permission to a regulated party to open a business or to engage in certain business conduct, an agency must provide "notice . . . in writing of the facts or conduct" that are grounds for the action and "an opportunity to demonstrate or achieve compliance."   <u>5 U.S.C § 558(c)</u>.   These requirements are in addition to the Administrative Procedure Act's prohibition against arbitrary or

capricious decisionmaking.   5 U.S.C. § 706.   And they make sense.   A business that seeks government permission before investing should receive the courtesy of some process before the government reverses course and destroys the value of that investment.

Congress did not seek to reserve these special protections for some narrow category of agency permissions.   It instead defined the term "license" as broadly as possible, to include "an agency permit, certificate, approval, registration, charter, membership, statutory exemption *or other form of permission*."   5 U.S.C. § 551(8) (emphasis added).

The CFTC's 2014 decision authorizing the PredictIt Market to open falls within this wide scope of government permissions that require some process before revocation.  Courts have found that this broad definition includes instances where an agency grants permissions that allow an entity to avoid compliance with administrative procedures or requirements.   *See, e.g.*, *Atl. Richfield Co. v. United States*, 774 F.2d 1193, 1199–202 (D.C. Cir. 1985); *Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067, 1072–76 (7th Cir. 1982).

The decision at issue here was not like the typical no-action relief that provides an advisory opinion about whether a proposed activity violates some specific, albeit unclear section of federal law.   The entire purpose of seeking the no-action relief was to obtain the CFTC's permission to operate the Market without

33

registering as a designated contract market.   And to obtain that permission *before* the companies operating the Market plunged tens of millions into setting it up and tens of thousands of traders invested in contracts offered by the Market.   To quote the 2014 decision, it "allow[ed]" the Market "to operate" without formally registering.   ROA.145.  This was a license under Congress's broad definition of the word.

When the CFTC revoked the Market's license, it did so without the process required by law.   While the CFTC's decision closing the Market stated that the Market "has not [been] operated . . . in compliance with the terms of" the no-action relief (ROA.153), it provided none of "the facts or conduct that may warrant" the revocation.   5 U.S.C. § 558(c)(1).   And the CFTC did not provide any opportunity "to demonstrate or achieve compliance" with any requirements that the CFTC believed to have been violated.  *Id.* § 558(c)(2).  Accordingly, the CFTC's decision to close the Market violated Section 558 of the Administrative Procedure Act.  And this additional violation of the Act enhances the Appellant's likelihood of success on the merits.

### 4.    Victoria University's Absence Does Not Spoil Appellants' Standing.

The Commission also has argued that Appellants lack Article III standing, because Victoria University—the recipient of the 2014 CFTC decision authorizing the Market's opening—did not formally join the case as a plaintiff.   ROA.351.

Appellants have standing, and the University's absence is of no consequence.

As an initial matter, Appellants clearly satisfy the standard for Article III standing.  They have suffered an injury in fact, that is fairly traceable to the CFTC's challenged conduct, and that is likely to be redressed by a favorable decision. *Bennett*, 520 U.S. at 162; *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018).

In addition to crippling investors' ability to trade out of their current positions, the CFTC's mandate guarantees premature liquidation of those positions, thus preventing the investors from realizing their investment.  The academic Appellants can no longer rely on accurate market data to teach, and the operators have had to sink substantial time and money into designing a system to do something that it was not designed to do.  Each concrete injury can be traced directly back to the CFTC's mandate to shutter the Market and to liquidate all contracts and is redressable through a favorable judicial decision.

The absence of Victoria University as a formal plaintiff changes nothing about Appellants' standing.  The CFTC has speculated that the Victoria University might have thrown the keys back on the Market anyway, whether or not the CFTC acted as it has.  *See, e.g.*, ROA.299.  But the University has made its position clear: It would not have closed the Market, much less kicked investors out of their contracts, but for the CFTC's arbitrary mandate to do so.  ROA.327 (Victoria Univ. Ltr.).

The CFTC also says that it somehow, through language in its 2014 letter opening the Market or otherwise, made Victoria University the only party who can complain about anything the CFTC does to the Market. ROA.297-99. The 2014 decision, however, specifically contemplated that investors from all walks of life would be offered political event contracts. *See* ROA.147-49. And the agency regulations say that "[o]nly the Beneficiary may rely upon the no-action letter." 17 C.F.R. § 140.99(a)(2). That term clearly includes the companies who operate the Market, the traders who invest in its contracts, and the academics who study it. It excludes would-be PredictIt *competitors* from citing the no-action letter as authority to set up a similar market.[4] In any event, neither the words of an agency letter nor agency regulation can amend Congress's prescriptions in the Administrative Procedure Act. The statute says that any person who has been "adversely affected or aggrieved by agency action" can bring a challenge. 5 U.S.C. § 702; *see Rollerson*, 6 F.4th at 641 (stating that "the APA broadly offers judicial review to any 'person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action"). Appellants clearly so qualify.

This is not the first time that an administrative agency has tried to bounce a

---

[4] Section 140.99 elsewhere refers to the "person on whose behalf the letter is sought" and the "recipient" of the letter, *id.* §§ 140.99(c), (e), but the regulation used neither of those terms to restrict who may rely on it. Instead, it used the broader term "beneficiary" for that purpose.

challenge on standing grounds, because the formal recipient of an agency letter was not challenging it as a plaintiff. It happened in *Bennett v. Spear*, <u>520 U.S. 154, 178</u> (1997), where the Supreme Court also described the final agency action doctrine. There, the Fish and Wildlife Service issued an opinion mandating remediation steps in a development necessary to protect an endangered species. *Id.* at 159. Given that the agency's order was specific and portended significant penalties for non-compliance on the party receiving it, there was ample evidence that the remediation steps were being undertaken because of the order. *Id.* at 168–71. The same is true here. It is no mystery why the Appellant investors' contracts will be arbitrarily liquidated by February 15. It is because the CFTC ordered Victoria University to do so, threatening significant sanctions if the University did not "dance to its tune." *Bd. of Trade*, <u>883 F.2d at 530</u>.

### B.    An Injunction Is Necessary to Prevent Irreparable Harm.

The CFTC does not meaningfully challenge the other factors for granting a preliminary injunction; all are satisfied. The injunction is plainly necessary to prevent irreparable harm. The district court took no action while irreparable harm mounted in December 2022. There is more and worse to come: The irreparable harm at stake today is nothing short of the Market's very existence and all of Appellants' interests in it.

Because of the imminent February 15, 2023 liquidation deadline, the eight

Appellants who are Market investors are being deprived of the value of having carefully invested in what they believe to be the most likely political outcomes. ROA.159-61, 163-64. They will not be able to see their contracts through to the end and realize the gain of having predicted correctly. More importantly, they lack a meaningful option to trade out of their 2024 election contracts, as spot prices are distorted for these contracts due to the CFTC's mandate that they terminate early. ROA.159-61, 163-64. On February 15, the CFTC's mandate will deprive them of the opportunity to see their investments through for good.

Trading irregularities caused by the Commission's decision also are corrupting the integrity of data generated by the Market as traders shift from focusing on the outcome of an event to attempting to salvage their investments. ROA.166, 192. Academics, in the course of studying Market data when the CFTC's decision to close the Market came down, have had their work compromised. A preliminary injunction will allow key contracts regarding the 2024 election to return to trading on some semblance of relationship to projected election outcomes.

For their part, the operators—PredictIt, Inc. and Aristotle International, Inc.— have been forced to undertake compliance costs, including administrative, labor, time, and other costs to force the premature liquidation of dozens of election contracts collectively with tens of thousands of investors. ROA.134. These compliance costs have been heavy to this point, but will continue up to the February

15 deadline.

If this Court does not step in, there will not be a market left to save and the absence of judicial intervention will significantly diminish the effect of a good faith and meritorious challenge to the Commission's arbitrary decision to close the Market.  Although some of this harm is economic, it is nonetheless irreparable.  The unnecessary losses of traders, the damage to a previously well-functioning market, and the costs of complying with the agency's mandate are all caused by the arbitrary decisionmaking of a federal government agency.  But the federal government is immune from claims for economic damages, making these harms "irreparable." *Wages & White Lions Invs.*, 16 F.4th at 1142 ("[C]omplying with an agency order later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs . . . because federal agencies generally enjoy sovereign immunity for any monetary damages."); *Texas v. EPA*, 829 F.3d 405, 433–34 (5th Cir. 2016) (plaintiffs suffer irreparable harm by economic damage caused by an invalid rule because there is "no mechanism . . . to recover the compliance costs they will incur if the Final Rule is invalidated on the merits").

The Commission has argued that Appellants' injuries are not irreparable because they have the option of seeking recourse against the University and other market operators by way of a civil suit for damages, but that is no option.  ROA.302. The argument is nothing more than the agency's false refrain that affected parties

must lean on the market operators to risk dramatic penalties, in lieu of challenging an arbitrary decision—which has been soundly rejected by the Supreme Court.[5]

### C. The Balance of the Equities and Public Interest Weigh Heavily in Favor of an Injunction.

The balance of equities and public interest "merge when the Government" is the party opposing a preliminary injunction. *Nken v. Holder*, <u>556 U.S. 418, 435</u> (2009). The requested injunction is targeted at preventing harm caused by the specific requirement to crash land contract markets, existing as of the date of the Commission's abrupt decision to end the Market, by an arbitrary date in February.

There is no other side of the ledger regarding the requested injunction. The Commission has never explained what is so special about February 15, or why already existing contract markets cannot be permitted to trade past then or until the elections they predict occur, even if there is some reason to wind down the Market eventually. The agency's silence is astounding. Not a single word in the CFTC's papers demonstrates that its arbitrary closure date serves the public good, or some policy objective, or anything else for that matter. Without any articulated government, much less public, interest in this invented February liquidation date,

---

[5] This argument ignores the fact that Appellants include the market operators and the jurisdictional and merits defenses that the market operators could raise to any action by the trader and academic Appellants. See Restatement (Second) of Contracts §§ 261, 264 (1981) (setting out impossibility defense based on intervening government action prohibiting performance).

entering an injunction that keeps the Market somewhat alive while the merits are being reviewed is clearly warranted.

In any event, the "public interest is served when administrative agencies comply with their obligations under the APA." *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.C. Cir. 2009). The balance of the equities and the public interest weigh heavily in favor of an injunction.

## II. The Court Should Pause the Agency's Decision Pending Judicial Review Pursuant to 5 U.S.C. § 705.

Through Section 705 of the Administrative Procedure Act, Congress provided a mechanism to preserve the status quo until an agency's action is judicially reviewed. Section 705 provides that, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, *including the court to which a case may be taken on appeal . . .* , may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705 (emphasis added). To the extent that the standard for evaluating a stay under Section 705 overlaps with the traditional preliminary-injunction standard, all of Appellants' arguments above apply equally here.

This is precisely the type of case in which the Court should exercise its statutory authority. Absent Section 705 relief or an injunction pending appeal, the challenged agency decision to end the Market will become a *fait accompli*. When

41

an agency decision is causing irreparable harm and will otherwise have had all its intended effects before judicial review occurs, the Court should postpone its effective date or otherwise stay its effect under Section 705.  *Wages & White Lion Invs., LLC.*, 16 F.4th at 1142–44 (stay under § 705 "to preserve the *status quo ante*" and prevent unrecoverable compliance costs); *Texas v. EPA*, 829 F.3d at 434 (stay under § 705 when harm would otherwise occur prior to judicial review).

## III.    This Court's Mandamus Authority Can Fill Any Asserted Gaps in Direct Appellate Jurisdiction to Address the CFTC's Looming and Arbitrary Closure Deadline.

This Court already denied the CFTC's motion to dismiss this appeal for lack of direct appellate jurisdiction over the district court's failure to timely enter a preliminary injunction.   ECF No. 34-2.   In doing so, citing the standard in *Carson v. American Brands, Inc.*, 450 U.S. 79, 84–85 (1981), a motion panel of this Court suggested that Appellants had demonstrated a "serious, perhaps irreparable, consequence" if the appeal of the district court's failure is not heard directly, at this time. *Id.* (citation omitted).

To the extent the CFTC continues to press any doubts about this Court's jurisdiction to address the above issues now and directly and in the event this Court finds any such CFTC claims persuasive, this Court should use its mandamus authority to fill any gaps in its direct appellate jurisdiction.   The Court carried the petition for mandamus, as well as the motion for injunction pending appeal, with the

case.   Specifically, the Court can grant a petition of mandamus to order the district court to enter the requested preliminary injunction while the courts consider the merits.

All elements for this Court exercising its mandamus authority are satisfied here.   Mandamus is appropriate when (1) "the [petitioners] seeking issuance of the writ [have] no other adequate means to attain the relief [they] desire[];" (2) the petitioners show that their "right to issuance of the writ is clear and indisputable;" and (3) "the issuing court, in the exercise of its discretion, [is] satisfied that the writ is appropriate under the circumstances."   *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (*en banc*).

To begin, if the Court were to reverse course and to develop doubts about its direct appellate jurisdiction over this appeal, Appellants will have no "adequate means to attain . . . relief."   *Id*.   By the time the district court resolves this case on the merits, the CFTC's February 15th deadline will have long passed, and the PredictIt Market along with it.   Only a grant of mandamus from this Court, directing the entry of a preliminary injunction, would prevent that unnecessarily damaging outcome under those assumed circumstances.

Next, Appellants have a "clear and indisputable right" to the writ, and the writ is "appropriate under the circumstances."   *Id*.   Where, as here, "a district court persistently and without reason refuses to adjudicate a case properly before it, the

court of appeals may issue the writ." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661–62 (1978); *cf.* Wright & Miller, Federal Practice and Procedure § 3933.1 (3d ed.) ("A writ may issue on the ground that undue delay is tantamount to failure to exercise jurisdiction."). To this day, the district court has not acknowledged Appellants' motion for a preliminary injunction, despite receiving Appellants' motion to expedite urging prompt consideration of the preliminary-injunction motion. ROA.387.

This Court has granted mandamus where a district court "undu[ly] delay[s]" resolving summary-judgment motions, such that "justice delayed is justice denied." *In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) (per curiam). Even when the issue at hand "is a complex matter" that involves the "broad discretion" that district courts enjoy in "managing their dockets," such delays may be "simply inexcusable," leaving "no other option but to grant mandamus relief." *Id*; *see also In re Hood*, 135 F. App'x 709, 711 (5th Cir. 2005) (issuing a writ to address district court's seven month delay in entering judgment). Sister circuits agree that "undue delay in the district court may qualify as an extraordinary circumstance justifying mandamus relief." *In re Wilson*, 810 F. App'x 224, 225 (4th Cir. 2020); *see also In re Sch. Asbestos Litig.*, 977 F.2d 764, 793 (3d Cir. 1992) (explaining that "refusal to adjudicate a critical part of a case" can justify mandamus); *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990).

What constitutes "inexcusable delay" undoubtedly depends on context.    Here, the CFTC's challenged closure deadline of February 15, 2023, threatens to effect all the harm this Administrative Procedure Act challenge is designed to prevent, with no court having decided the merits.    A federal administrative agency, very regrettably, has created a crisis and a time crunch.    The district court's delay in considering the preliminary injunction motion, choosing rather to watch the Market decay, constitutes "inexcusable delay" under the circumstances.    Here, the preliminary injunction is a "critical part of the case," *In re Sch. Asbestos Litig.*, 977 F.2d at 793, and the district court's refusal to rule on the issue warrants mandamus. *See In re Volkswagen*, 545 F.3d at 319 (granting mandamus when the prejudice suffered by petitioners could not "be put back in the bottle"); *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 289 (5th Cir. 2015) (granting mandamus where "the very harm sought to be avoided . . . will have worked irreversible damage and prejudice by the time of final judgment").

## CONCLUSION

Appellants respectfully request that the Court reverse the district court's refusal of a preliminary injunction and remand with instructions to enjoin the CFTC from enforcing its mandate to close the PredictIt Market and to liquidate all contracts by 11:59 PM on February 15, 2023, until 60 days after a final judgment in this matter. The Court has scheduled briefing and oral argument so that this case can be decided

before the agency's arbitrary deadline. As oral argument will occur a week before the deadline, Appellants respectfully request that the Court (i) quickly issue a summary opinion, with a more substantive opinion to follow or (ii) quickly grant the motion for injunction pending appeal, which is being carried with the case, to permit time for the Court to resolve the issues in a substantive opinion. Such a ruling from the bench or in the two days thereafter would reduce the risk of chaotic trading behavior in the days leading to the CFTC's deadline.

Respectfully submitted,

*/s/ Michael J. Edney*

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
T: (202) 778-2204
medney@huntonak.com

John J. Byron*
STEPTOE & JOHNSON LLP
227 West Monroe Street
Suite 4700
Chicago, Illinois 60606
T: (312) 577-1300
jbyron@steptoe.com
*Application for admission pending*

Shannen W. Coffin
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
T: (202) 429-3000
scoffin@steptoe.com

*Counsel for Plaintiffs-Appellants Kevin
Clarke, Trevor Boeckmann, Harry Crane,
Corwin Smidt, Predict It, Inc., Aristotle
International, Inc., Michael Beeler, Mark
Borghi, Richard Hanania, James D. Miller,
Josiah Neeley, Grant Schneider, and Wes
Shepherd*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2023, I electronically filed this brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system. I further certify that Counsel for Appellee, Kyle Druding, has been served by email at the address listed below:

Kyle M. Druding
*Assistant General Counsel*
U.S. COMMODITY FUTURES TRADING COMMISSION
Three Lafayette Centre 1155 21st Street, N.W. Washington, DC 20581

Phone: (202) 418-6024
Fax: (202) 418-5127
kdruding@cftc.gov

*/s/ Michael J. Edney*
Michael J. Edney
*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the requirements of <u>Federal Rule of Appellate Procedure 32(a)(5)</u> and (a)(6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font, and that it complies with the type-volume limitations of Rules 29(a)(5) and 32(a)(7)(B), because it contains 10,780 words, excluding the parts exempted by Rule 32(f), according to the count of Microsoft Word.

*/s/ Michael J. Edney*
Michael J. Edney
*Counsel for Plaintiffs-Appellants*